## THE STATE v. PHELIX McGEHEE, Appellant.

Division Two, June 5, 1925.

1. **SEXUAL INTERCOURSE: In School House Yard.** Section 3256, Revised Statutes 1919, making it a misdemeanor for any person to encamp near a public highway, or to stop or encamp upon a vacant lot or square, or near a school house, "for the purpose of prostitution or assignation or illicit intercourse," does not apply to individual immorality, but contemplates a stopping or encampment and a preparation for commercial vice.

State v. McGehee.

2. ———: Adultery. So much of Section 3515, Revised Statutes 1919, as relates to adultery, has no application to sexual intercourse between unmarried persons.

3. ———: Unmarried Persons: Open and Gross Lewdness: Arrest. In order for unmarried persons to be guilty of a violation of Section 3515, Revised Statutes 1919, they must be guilty of living together in an open and notorious manner, or be guilty of open gross lewdness. A single act of sexual intercourse between an unmarried man and an unmarried woman, in a school house yard, at night, at a secluded spot, not open and notorious, is not an offense under said section; and not being an offense an officer has no authority to seek them out and arrest them.

4. ———: ———: ———: State's Incomplete Case Pieced out by Defendant's Witnesses. Evidence for the State, which is not sufficient to make out a case, may be supplemented by evidence offered by defendant when the two parts are not contradictory, but if they are entirely inconsistent the defendant's evidence cannot be used to piece out the State's case. An officer testified that he went to a school-house yard at night and found a man and woman sitting on the steps, and that after speaking a few words with them he walked around the corner of the school house and came upon defendant and another woman in a compromising act, and attempted to put defendant under arrest; and according to his testimony the defendant and the other woman were some distance from the steps, at a secluded spot and entirely out of his view, and if so they did not commit the offense denounced by the statute, because the act was not open and notorious. The woman on the steps and defendant testified for defendant that defendant and the other woman were in plain view of the two on the steps, about twenty feet away, and observing perfect propriety, and if this testimony can be placed with that of the officer that the defendant and the other woman were engaged in immoral conduct, a case of violating the statute is made out, for the act was one of open lewdness; but otherwise, there is no corroborating evidence that will piece out the story of the officer so that it might be inferred that the act of indecency was committed in an open and notorious manner. *Held*, that the testimony of the officer must be true in its entirety, or that for the defense must be true; and the evidence for the defendant cannot be used to piece out the evidence for the State, for they are entirely inconsistent; and if either is true the defendant was violating no law, and the officer had no right to arrest him.

5. ARREST. A night marshal and watchman of a city of the fourth class has a right to arrest a person in the act of committing a statutory misdemeanor in his presence, but he has no right to ar- .
308 Mo. Sup.—36.

rest a person for committing an act which is not an offense under the law.

6. **ILLEGAL ARREST**: **Right of Self-Defense**: **Good Faith**: **Instruction.** The right to resist arrest does not depend upon the good or bad faith of the officer who attempts the arrest; it depends upon his legal right to make the arrest. Where defendant is being tried for an assault with intent to kill an officer, and the facts are that the act for which the officer attempted to arrest him was not an offense, and after the officer had shot defendant in the shoulder defendant drew his pistol and shot the officer, the court should not give an instruction telling the jury that if they find from the evidence that the officer believed "in good faith that he had the right and that it was his duty to arrest the defendant" they could not justify defendant's shooting him on the ground of self-defense, but should have told the jury that the defendant had the right to resist the arrest and to defend himself with proper force to prevent it, because the officer had no right to arrest him. But the good faith of the officer may be considered by the jury as a circumstance in the case.

7. **ARREST**: **Misdemeanor**: **Shooting**: **Self-Defense.** An officer is never justified in shooting one guilty only of a misdemeanor in order to effectuate his arrest or to prevent his escape. In order for an officer to justify himself in shooting another in self-defense while attempting to effect his arrest, he must be in imminent danger of great personal injury, or the shooting must be done to prevent the commission of a felony. An instruction which justifies the shooting of defendant by an officer if the defendant was resisting arrest and about to inflict bodily injury on the officer, no matter how slight the injury threatened, is error.

8. ————: **Shooting Accused**: **Instruction**: **Taking Away Right of Self-Defense.** An instruction telling the jury that if the officer shot defendant in good faith and for sufficient justification while attempting to arrest him, then defendant cannot justify his shooting of the officer on the ground of self-defense, ignores the evidence for defendant that he was shot and partly disabled before he shot the officer, and that the officer continued to advance on defendant in a threatening attitude as if he intended to continue shooting, and takes away the defendant's right of self-defense, no matter what danger he was in or what aggressive attitude was assumed by the officer, if the officer in the first instance was justified in firing, and is error.

9. ————: **Shooting Officer**: **Self-Defense**: **Knowlege of Officer's Character.** An instruction which does not allow a finding that the defendant acted in self-defense in shooting an officer, who was attempting to arrest him, unless the officer was not acting as such, or

unless the defendant did not know that he was acting as an officer, is faulty, where defendant had a right to defend himself and to resist arrest with such force as was necessary to prevent arrest if he had committed no offense and the officer for that reason had no right to arrest him.

10. ———: Legality: Question of Law. In the trial of a defendant for shooting an officer attempting to arrest him, an instruction requiring the jury to find before they could acquit him on the ground of self-defense that he was not violating any law of the State, and thus to determine the law, is faulty.

11. DEFENDANT AS WITNESS: Cross-Examination: Sweetheart: Kind of Girl. Where the defendant had testified that a certain girl was his sweetheart it was not error to permit the State on cross-examination, on its theory that he was guilty of improper conduct with her in a public place, to ask him what kind of a girl she was.

Citations to Headnotes: Headnote 1: Prostitution, 32 Cyc. p. 733. Headnote 2: Adultery, 2 C. J. sec. 7. Headnote 3: Lewdness, 36 Cyc. secs. 5, 8. Headnote 4: Criminal Law, 16 C. J. sec. 1559. Headnote 5: Arrest, 5 C. J. sec. 31. Headnote 6: Arrest, 5 C. J. sec. 31; Assault and Battery, 5 C. J. sec. 237. Headnote 7: Assault and Battery, 5 C. J. sec. 143; Homicide, 30 C. J. sec. 227. Headnote 8: Assault and Battery, 5 C. J. sec. 350. ·Headnote 9: Homicide, 30 C. J. sec. 617. Headnote 10: Assault and Battery, 5 C. J. sec. 350. Headnote 11: Witnesses, 40 Cyc. p. 2510.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker*, Judge.

REVERSED AND REMANDED.

*Farris, Munger & Munger* for appellant.

(1)   The State must establish, by competent proof, every material fact necessary to constitute the offense charged—to miss one material fact is to miss the whole case.   State v. Rutledge, 257 S. W. 1059; State v. Kaklert, 260 S. W. 520; State v. Haynes, 262 S. W. 1037. (a) Inasmuch as no proof was made of Harris's authority to make arrests, for all the purposes of this case, he had none.   5 C. J. 396; 25 C. J. 574; Pandjaris v. Hartman, 196 Mo. 548. Failure of proof cannot be supplied by presumptions or intendments.   State v. Zingh, 259 S. W. 452. (b) If Harris had no power to arrest, then he was a trespasser and McGehee had the right to shoot him, if necessary, in resisting his attempt to arrest defendant.   5 C. J. 396; 29 Cyc. 1330; State v. Evans,

83 Mo. App. 301; Wehmeyer v. Mulvihill, 150 Mo. App. 209; State v. Underwood, 75 Mo. 237; Ford v. Steamship Co., 3 Hawaii Fed. 243. (c) A man cannot "believe" himself into the right to restrain or imprison other men wrongfully, however honest he may be in such belief. 5 C. J. 394; State v. Davidson, 44 Mo. App. 517. (d) Sexual intercourse between unmarried persons is morally wrong, but it is not, of itself, interdicted by the law of this State. There must be a flaunting of the immoral conduct in the face of society. State v. Chandler, 132 Mo. 164; State v. Phillips, 49 Mo. App. 327. (2) Instruction numbered four given by the State is erroneous in that: (a) It assumes, without proof, that Harris had the right to arrest any person found having sexual intercourse on the high school grounds in Dexter with any woman, without regard to the surrounding circumstances. It also assumes that Harris had the right to arrest anyone found thereon "engaging in lewd or indecent conduct." 1 Blashfield's Instructions to Juries, pp. 63, 76; State v. Mills, 272 Mo. 534; State v. Langley, 248 Mo. 554; State v. Stubblefield, 239 Mo. 530. (b) However honest may have been Harris' belief that he was engaged in a meritorious and legal act in attempting to apprehend McGehee, if he did not in fact possess such authority, he was the wrongdoer and McGehee had the right to preserve his liberty even to the extent of threatening to strike Harris before Harris shot him and shooting Harris after he had been shot by Harris. Gray v. Earls, 250 S. W. 573. (c) Had Harris shot McGehee in an attempt to make a lawful arrest he would not have been justified in shooting McGehee unless the jury found from the evidence that it was necessary to shoot him in order to accomplish such arrest or to protect himself from immediate great bodily harm. State v. Hancock, 73 Mo. 22.

*Robert W. Otto*, Attorney-General, and *J. Henry Caruthers*, Assistant Attorney-General, for respondent.

(1) Under the undisputed evidence, Harris was the night marshal of Dexter at the time defendant shot him,

and his right to arrest the defendant was not questioned, either in the trial or by motion for a new trial, and hence is not an issue here.  (2)  The case was tried on the theory that the prosecuting witness was assaulted and shot by defendant while the former was in the discharge of his duty as an officer, and while attempting to arrest defendant for an offense committed in the officer's presence.  It was defendant's duty as a citizen, under the circumstances disclosed by the evidence, to submit to the arrest.  Sec. 3913, R. S. 1919; State v. Bateswell, 105 Mo. 615; State v. McNally, 87 Mo. 652; State v. Pritchett, 219 Mo. 672.  (3)  When, as a general proposition, one refuses to submit to an arrest after he has been touched by an officer or endeavors to break away after the arrest has been effected, he may lawfully be killed, provided this extreme measure is necessary.  Sec. 3914, R. S. 1919; State v. Dierberger, 96 Mo. 674; State v. Fuller, 96 Mo. 168; State v. Turlington, 102 Mo. 658; State v. Coleman, 186 Mo. 162.  (4)  The testimony of officer Harris is that defendant and a woman were found by him in the act of sexual intercourse on the high school grounds in the city of Dexter about midnight.  This was an act of open gross lewdness and lascivious behavior prohibited by Sec. 3515, R. S. 1919, and a violation of Sec. 3256, which provides that "any person or persons who shall stop  .  .  .  near any school house,  .  .  . for the purpose of  .  .  .  illicit sexual intercourse .  .  .  shall be guilty of a felony."  State v. Pedigo, 190 Mo. App. 297.

WHITE, J.—The defendant was tried before a jury in Stoddard County, September 15, 1923, for assault with intent to kill, under Section 3262, Revised Statutes 1919.  He was found guilty of the offense defined in Section 3264, Revised Statutes 1919, and appealed.

He was charged with shooting one William H. Harris, night marshal and watchman of the city of Dexter, on whose evidence largely the case was made out.  Harris testified that on the night of September 13, 1921, he heard laughing and talking in the public school-house

grounds in Dexter, went in and found one Booyer and Mary Stubblefield, whose name then was Mary Reddick, sitting on the front steps of the school house. He stopped and spoke a few words to them, then walked around the corner of the school house and came upon the defendant McGehee and Thelma Reddick, the sister of Mary Reddick, in a very compromising position. He said to the man, "Consider yourself under arrest; I am going to take you both to town." The girl jumped up and ran away, and McGehee began a quarrel with Harris, which apparently continued for an appreciable time. McGehee finally drew back his fist as if to strike Harris, who then shot McGehee in the right shoulder. In the meantime Mary Reddick had gone away, and Booyer ran up to McGehee, who exclaimed, "I am shot, and shot bad." Booyer took hold of him, he walked a few steps and then drew his revolver with his left hand and fired three shots at Harris, striking him each time. Harris fell to the ground; and defendant said: "I wish I had more loads." Help soon arrived and Harris was taken away. On cross-examination Harris said that after he had talked to Booyer and Mary Reddick he walked around the building, a distance of about forty ordinary steps, before he came upon McGehee and Thelma Reddick. He explained in detail the way the shooting occurred, and swore that he shot in self-defense because he though McGehee was going to strike him. Both men were severely wounded.

The defendant testified that he was with Thelma Reddick in the school-house grounds and Booyer was with Mary Reddick; that Thelma Reddick was his sweetheart. When Harris arrived there, Booyer and Mary Reddick were sitting on the steps, defendant and Thelma, within a short distance, within plain view, sitting on the grass, acting with perfect propriety. He had no idea the marshal was looking for him; he had given him no cause to look for him. When Harris came up to where he and Thelma were, the girl walked away and Harris announced that he was going to arrest witness, saying he had caught him in the act, which witness denied. A quar-

rel ensued for several minutes in which there was considerable swearing. Defendant had no weapon in his hand, made no attempt to strike Harris, but called Harris a liar, prefixing an epithet with some profanity, when Harris shot him. He staggered and was held up by Booyer, Harris continued to hold his gun on him, and he thereupon pulled his own revolver and shot three times, each shot striking Harris; that he fired because he thought Harris was going to shoot again. He·fired no other shot after Harris was down. He was corroborated by Mary. Reddick.

Several questions arise in the record, such as whether Harris had a right to arrest McGehee, whether McGehee had a right to resist arrest, and whether the defendant's alleged offense or the official character of Harris affected the defendant's right of self-defense. Instructions to the jury affecting these questions were objected to by the appellant, and exceptions saved to·the action of the court in giving such instructions.

I. It is first necessary to determine whether under the facts McGehee was guilty of a statutory offense. The Attorney-General asserts that he was guilty of violating Section 3256, Revised Statutes 1919, which makes it a misdemeanor for any person to encamp near a public highway, or to stop or encamp upon a vacant lot or square, or near any school house, "for the purpose of prostitution or assignation or illicit sexual intercourse."

**Offense and Arrest.**

That section undoubtedly is directed against an immoral business conducted for commercial purposes. It is an offense to stop or encamp at such a place for the *purpose* of carrying on the business. It would not matter whether any immoral act was actually committed or not, it is the encampment, or stopping for the purpose, that constitutes the offense. Plainly this contemplates a preparation for commercial vice, not individual immorality.

It is likewise argued that McGehee was guilty of violating Section 3515, Revised Statutes 1919. That section, defining adultery, has often been construed by this court as it affects persons one of whom is married. [Dameron v. State, 8 Mo. 494; State v. Chandler, 132 Mo. 155; State v. Sekrit, 130 Mo. 401.] With that part of the section we have nothing to do because McGehee and Thelma Reddick were unmarried and of full age. Other statutes, with sufficient severity, define crimes against females of certain immature age. At common law, adultery could not be committed unless one of the persons involved was married. [State v. Holland, 162 Mo. App. 678, l. c. 680.] In order to be guilty of the violation of Section 3515 by persons unmarried they must be guilty of living together in open notorious manner, or be guilty of open, gross lewdness. The statute is violated by any person married or single where the immoral act is open and notorious. The authorities are ably analyzed in the Holland case, supra, by Judge Ellison of the Kansas City Court of Appeals, and in the case of State v. Pedigo, 190 Mo. App. 293, by Judge Sturgis of the Springfield Court of Appeals. [See also State v. Crowner, 56 Mo. 147.]

Section 3515 makes the offense a misdemeanor, and Harris had a right to arrest McGehee if he was guilty of the offense and if it was committed in his presence. According to his own story, Booyer and Mary Reddick were sitting on the steps of the school house, and McGehee and Thelma Reddick were at a distance, apparently around the schoolhouse, entirely out of view from that point. It was a secluded spot and not open and notorious, and, though a public place, not a place used by the public at that hour. According to the testimony of McGehee and Mary Reddick, McGehee and Thelma were observing perfect propriety twenty feet away (for they measured the distance), and in plain view of herself and Booyer. Thelma Reddick did not testify. If the jury believed the testimony of McGehee and Mary Reddick, he was not guilty of any offense which required arrest

because he was doing nothing improper. The testimony of Harris, taken on its face, shows McGehee was not guilty of violation of that statute because his act was not open and notorious but in a secluded spot. If the statements of McGehee and Mary Reddick, that McGehee and Thelma were in plain view, be placed with the evidence of Harris that they were engaged in immoral conduct, then a case of violation of the statute would certainly be made out. Otherwise we are unable to discover from the evidence corroborating circumstances which would piece out the story of Harris so that it might be inferred that the act of indecency was committed in an open and notorious manner.

No doubt evidence for the State, which is not sufficient to make out a case may be supplemented by evidence offered by a defendant when the two parts would not be contradictory. In this case the story of Harris and the testimony of Mary Reddick and McGehee could not be pieced together. Booyer and Mary Reddick testified that Harris came to where they sat, spoke to them, sat down, and remained five minutes, and that Thelma and Phelix were twenty feet away, in plain view. This contradicts *in toto* the story of Harris that they were not in view; that he walked around the building a distance of forty steps, and discovered them in a secluded spot. The story of Harris must be true in its entirety, or that for the defense must be true; they are entirely inconsistent. If either story is true, McGehee was violating no law and Harris had no right to arrest him.

II.   Instruction No. 4, given on behalf of the State, is of some length, and after requiring a finding of the situation as Harris describes it, contains the following: "If you further find and believe from the evidence beyond a reasonable doubt that the said Harris did then and there believe in good faith that he had the right and that it was his duty to arrest the said defendant," then the jury

Self-Defense: Arrest: Good Faith.

could not justify the shooting on the ground of self-defense.

The right to resist arrest does not depend upon the good or bad faith of the officer who attempts the arrest; it depends upon his right. [5 C. J. 405; Ib. 750.] The jury should have been told that McGehee had a right to resist arrest and to defend himself with proper force to prevent it because the officer had no right to arrest him. While the good faith of the officer would not affect the right to resist, it was proper for the jury to consider it as a circumstance of the case.

The instruction continues as follows: "or if you find defendant knew he [Harris] was an officer" and placed the defendant under arrest and the defendant was making preparation to resist further custody, *"by inflicting bodily injury* on said Harris, and that said Harris in good faith shot defendant to prevent such threatened injury," that the defendant could not justify the shooting of Harris on the ground of self-defense. This permits a conviction if the. defendant resisted arrest, whether Harris had a right to arrest him or not.

An officer is never justified in shooting one guilty of a misdemeanor to effectuate his arrest or prevent his escape. [30 C. J. 41.] And in order to justify shooting in self-defense while attempting an arrest, he must be in imminent danger of *great* personal injury, or it must be done to prevent the commission of a felony. [30 C. J. pp. 56-57.]

Section 3233, Revised Statutes 1919, defines justifiable homicide to be when it is committed in resisting an attempt to commit a felony, or to prevent "some great physical injury." And under Section 3264, wounding another would not be justifiable unless committed under like circumstances. This instruction justifies the shooting of McGehee by Harris if McGehee was resisting and about to inflict bodily injury on said Harris, no matter how slight the injury threatened.

The instruction further is erroneous because it tells the jury that if Harris shot in good faith and for suf-

ficient justification, the defendant could not justify the shooting of Harris on the ground of self-defense. That ignores the evidence of defendant that he was shot and partly disabled, that Harris continued to advance on him in a threatening attitude as if he intended to continue the shooting. It takes away the appellant's right of self-defense, no matter what danger he was in or what aggressive attitude was assumed by Harris if Harris in the first instance was justified in firing.

III.    Instruction No. 5, objected to, contains the following:

"The court instructs the jury that if you find and believe from the evidence that on the occasion of the shooting that occurred on the High School grounds at Dexter, Missouri, between the prosecuting witness, William Harris, and the defendant, Phelix McGehee, on or about September 13, 1921, the said William Harris was not acting in his official capacity as night marshal of the city of Dexter, Missouri, or that the said Phelix McGehee did not know at the time that William Harris was an officer of the law, or that he did not know that he was acting in the capacity of such officer, and if you find that defendant was not then violating any law of the State, and that the said William Harris started the difficulty that resulted in his being wounded by Phelix McGehee, and fired the first shot in such difficulty, and if you find that said Phelix McGehee used no more force than appeared to him to be reasonably necessary to protect himself from great personal injury, then he shot in self-defense and you should acquit him."

This instruction is faulty in that it does not allow a finding that McGehee acted in self-defense unless Harris was not acting as an officer, or that McGehee did not know that he was acting as an officer, whereas he had a right to defend himself and to resist arrest with such force as was necessary to prevent arrest if Harris had no right to arrest him, whether Harris was acting in his

official capacity or whether McGehee knew he was an officer.

The instruction is further faulty because it submitted a question of law to the jury. It required the jury before they could acquit the defendant on the ground of self-defense, to find that he was not violating any law of the State, and thus to determine the law. They were to judge whether, under the facts, the defendant had violated the law, without any direction as to what the law was with relation to such facts.

IV. The appellant objects to instruction numbered 6, on the credibility of witnesses, where the jury were authorized to take into consideration among other things "the character" of a witness. It is claimed this is error because there was no evidence as to the character of the witnesses. That objection to such an instruction has been answered by this court in the recent case of State v. Will Brown, 271 S. W. 275, decided at the last term of this court.

Error is assigned to the cross-examination of the defendant in relation to Thelma Reddick. He had stated in his examination in chief that she was his sweetheart. The state's attorney then asked the defendant if he knew what kind of a girl she was. This question was objected to and objection overruled and exception properly saved. The witness replied that she was a nice girl so far as he knew. On the theory of the State, that the defendant was guilty of improper conduct with the girl in a public place, the ruling was not erroneous. The State's attorney then asked the witness if he did not know that Thelma had paid a fine "for being over there that night." This was objected to and the court then said: "He is not responsible for what she did afterwards." Appellant claims the court erred in failing to sustain an objection in terms to the question and in making the remark which appeared to assume the guilt of Thelma Reddick. We find in the record no exception saved to this action of the court.

Other alleged errors are pressed upon our attention, but in another trial they probably will not recur.

The burden of appellant's argument is to the effect that no case was made out for the jury and that the defendant should be discharged. Whether or not the defendant was guilty depends upon the incidents following the attempted arrest. There was evidence from which the jury might properly infer that he committed the assault without sufficient grounds for acting in self-defense. Whether defendant fired in apprehension of further attack by Harris, or whether he shot under circumstances which would have rendered him guilty of murder or manslaughter if death had ensued, as provided in Section 3264, Revised Statutes 1919, were questions of fact for the jury under proper instructions.

The judgment is reversed and the cause remanded. All concur.