STATE OF MISSOURI, at the Relation and to the Use of AUSTIN W. KAERCHER, Appellant, v. GEORGE J. ROTH and SOUTHERN SURETY COMPANY, a Corporation.—49 S. W. (2d) 109.

Division Two, April 8, 1932.

*Roberts P. Elam* and *Charles B. Williams* for appellant.

*J. L. Harlan* and *Wurdeman, Stevens & Hoester* for respondents.

108

WESTHUES, C.—On March 30, 1929, an amended petition was filed, in this case, in the Circuit Court of St. Louis County. The suit was brought in the name of the State of Missouri, at the relation and to the use of Austin W. Kaercher against defendant, George J. Roth, constable of Central township, St. Louis County, and defendant, Southern Surety Company, a corporation, as surety on the bond of defendant, Roth. Plaintiff prayed twenty thousand dollars ($20,000) for damages, resulting from personal injuries received. Defendants filed separate demurrers, which alleged that the petition did not state a cause of action. The trial court sustained the demurrer of each defendant, and plaintiff refused to plead further. Thereupon judgment was entered against him. Plaintiff was unsuccessful in his motion for a new trial and appealed to this court.

Plaintiff's petition alleged the election of defendant, Roth, as constable of Central township; the execution of a bond, as required by law, with Roth as principal and defendant, Southern Surety Company, as surety. The petition also alleged Roth's appointment of William Skow, as deputy constable. Then followed the allegations of the petition that gave rise to the controversy in this case, and upon which the demurrers were sustained. These allegations are:

"Plaintiff states that the said bond executed as aforesaid by the said George J. Roth and Southern Surety Company was breached

and broken in this: That on or about the 24th day of October, 1926, in the said Central Township, County of St. Louis and State of Missouri, the said William Skow, while acting by virtue and under color of his office as Deputy Constable to the said George Roth, as aforesaid, and in the course of his duties as such Deputy Constable, began the pursuit of an automobile in which relator, Austin W. Kaercher, was a passenger and attempted to arrest the driver of the said automobile for a misdemeanor then and there committed in said Central Township, County of St. Louis and State of Missouri, in the presence of the said Deputy Constable, William Skow; and the said driver of the said automobile fled from the said Deputy Constable; and the said Deputy Constable, William Skow, in attempting to make the arrest as aforesaid, hotly pursued the said driver of the said automobile in which relator was a passenger from said Central Township, County of St. Louis, State of Missouri, into the City of St. Louis, State of Missouri, and did then and there, while acting by virtue and under color of his office as Deputy Constable, as aforesaid, arrest the said driver of the said automobile, and in attempting to arrest the driver of said automobile, as aforesaid, the said William Skow did then and there commit an assault upon your relator, Austin W. Kaercher, by wilfully, recklessly, maliciously, intentionally, wantonly and unlawfully firing his, the said William Skow's, pistol at and towards the automobile in which relator was a passenger, and the ball from the pistol so fired by the said William Skow, while acting under color and by-virtue of his office as Deputy Constable, as aforesaid, struck relator in the back and penetrated his chest and lung and injured him as hereinafter alleged.

"Plaintiff further avers that as a direct and proximate result of said injury and shooting, as aforesaid, relator sustained the following injuries:"

As to a demurrer, the allegations of a petition are taken as true. This rule of law is not questioned by the parties to this suit and no citation of authorities is necessary to sustain it. The petition alleges the driver of the automobile, in which plantiff was riding, committed a misdemeanor in the presence of the deputy constable, Skow, in Central township. Skow, under these circumstances, had the authority to then and there arrest the driver without a warrant, and this he attempted to do. Skow in his attempt to arrest the driver, was acting by virtue of his official authority (*virtute officii*). The driver fled in order to avoid arrest. Skow followed in hot pursuit and, while still attempting to make the arrest, drew his pistol and intentionally and maliciously fired at the fleeing car, striking plaintiff, a passenger in the car, and injuring him. Under this state of facts (leaving out of consideration the fact that Skow had crossed

the county line and had entered another county at the time of the shooting), the defendant, Roth, as constable, and defendant, Southern Surety Co., as bondsman, were liable to plaintiff in damages for the injuries received. The liability of defendants, under such circumstances, is supported by the overwhelming weight of authority. Skow had no right to shoot at the person he was attempting to arrest. 5 C. J. 426, sec. 62, also, 30 C. J. p. 41; 24 R. C. L. 966, sec. 60, and cases cited under note 9; State to use v. Cunnningham, 51 L. R. A. (N. S.) (Miss.) 1179; State v. McGehee (Mo.), 274 S. W. l. c. 73 (9, 10); Gray v. Earls, 250 S. W. l. c. 573 (5, 6); State v. Smith, 101 N. W. (Iowa) 110; American Guaranty Co. v. Thomas McNiece, 39 A. L. R. (Ohio) 1289, 146 N. E. 77. ■ The reason for the rule, that an officer is not justified in using a deadly weapon in order to arrest a person guilty of only a misdemeanor, is well stated in 5 Corpus Juris, page 426, in the notes which quote from State v. Smith (Iowa), supra:

" ' 'As the lawmaking power itself could not inflict the death penalty as a punishment for a misdemeanor, "it would ill become the 'majesty' of the law to sacrifice a human life to avoid a failure of justice in the case of a petty offender who is often brought into court without arrest and dismissed with a nominal fine." ' [State v. McClure, 166 N. C. 321, 330, 81 S. E. 458; Thomas v. Kinkead, 55 Ark. 502, 18 S. W. 854, 29 Am. St. Rep. 68, 15 L. R. A. 558.] " '

A further comment is made in the same footnote as follows:

"A custom among police officers to fire their pistols when pursuing fugitives, even though they are misdemeanants, as a ruse to prevent their further flight, is illegal as a reckless use of firearms. State v. Cunningham (Miss.), 65 So. 115, 117, 51 L. R. A. (N. S.) 1179 (where the court said: 'The officer owes to the fugitive the duty to exercise care and precaution not to injure him. He must not intentionally shoot a misdemeanant who is a fugitive, nor must he discharge a firearm while in pursuit, in such a manner as to cause such fugitive injury')."

Section 2174, R. S. Mo. 1929, limits the jurisdiction of constables to the counties in which they are elected. [Rodgers v. Schroeder, 287 S. W. (Mo. App.) 861, and Sossamon v. Cruse, 45 S. E. (N. C.) 757.]

Respondents concede that the shooting was entirely unjustifiable. They do not deny liability, except on the ground that the constable's actions, causing the injury, occurred in Central township. ■ Respondents' position is that when Skow crossed the county line into the city of St. Louis his acts immediately ceased to be *virtute officii* and became those of a private citizens; that the acts then

were not even *colore officii*. In other words, defendants say cross-ing the county line automatically disrobed Skow as an official and placed on him the cloak of a private citizen. Therefore, the con-stable and bondsman are not liable for any act committed by Skow outside of the county.

We cannot subscribe to such a doctrine. It must be remembered that Skow was acting within his authority when he attempted to arrest the driver of the automobile in which plaintiff was riding. Skow was performing his official duty when he pursued this car. It was one continuous act, that is; the attempt to arrest the driver for committing a misdemeanor in his presence. The question then remains, was this act done by virtue of his office, under color of office, or was it done as a private citizen? If the act was done by virtue of his office or under color of office then the bondsman, Surety Company, is liable in damages for the injuries inflicted. If the act can be said to be that of Skow as a private citizen only, then the bondsman is not liable. The test often applied, which has received approval from many of the highest courts of the land and to which we desire to add our approval, is found in 24 Ruling Case Law, 965, section 59. It is as follows:

"The test should be: Would he have acted in the particular instance if he were not clothed with his official character, or would he have so acted if he were not an officer? If he assumed to act as an officer—whether under valid or void process, or under no process whatever—the bondsmen should be held, as he is held, for they are the sponsors of his integrity as an officer while acting as such."

For cases applying above test and approving same see Geros v. Harries, 39 A. L. R. 1927, l. c. 1304, 1305, 236 Pac. 220; Lynch v. Burgess, 273 Pac. (Wyo.) l. c. 693; Bostatter v. Hinchman, 243 Mich. 589, 220 N. W. 775.

In the case of State ex rel. Brennan v. Dierker, 101 Mo. App. 636, 74 S. W. 153, which is an opinion by GOODE, J., a sheriff's bonds-men were held not liable on the sheriff's bond. Brennan, the in-jured party, was arrested, by a sheriff without a warrant, for a misdemeanor not committed in his presence. The concluding part of the opinion is as follows:

"Dierker thought he was acting officially when he arrested the appellant—based his right to do so on the fact that he was sheriff—and the appellant yielded to him for that reason. So far as Dierker is concerned, the case is clear. But his bondsmen must be considered, and their rights are of prime importance in legal contemplation. Probably the confusion in such matters has grown out of the over-weening tenderness of the law for sureties. Dierker's bondsmen did

nothing, and their responsibility turns, not on whether he thought his conduct was official, but whether it was such as the law classes among acts done under color of office. As there are controlling precedents directly in point, we feel bound to follow them, without regard to the principle they recognize being out of harmony with the one recognized in the decision of other causes which do not stand on facts exactly similar." ■ The only basis we can find for the doctrine announced in the opinion in the above case and kindred cases, is, as the learned Judge GOODE said: "—the overweening tenderness of the law for sureties." This tenderness of the law for sureties had its origin when the courts were called upon to decide the liability of gratuitous sureties on bonds. [Annotations in 12 A. L. R. 382.] However, this so called tenderness for sureties has no place in the law in cases of sureties for hire. [Royal Indemnity Co. v. Northern Granite & Stone Co., 12 A. L. R. 378, and annotations at page 382-390.] These sureties receive compensation, and for a valuable consideration bind themselves and guarantee that in cases of sheriffs or constables, the officers will not abuse the power with which they have been vested. The sureties should be held to their contract. The Dierker case, supra, quotes with approval the following, taken from Kelly v. Moore, 51 Ala. 364:

"'But when an officer assumes to act under color of his office, having no writ or process whatsoever, or having process which on its face is utterly void, it seems to be the prevailing doctrine that whatever he may do under such circumstances imposes no liability on his sureties. To constitute color of office, such as will render an officer's sureties liable for his wrongful acts, something else must be shown besides the fact that, in doing the act complained of, the officer claimed to be acting in an official capacity. If he is armed with no writ, or if the writ under which he acts is utterly void, and if there is at the time no statute which authorizes the act to be done without process, then there is no such color of office as will enable him to impose a liability upon the sureties in his official bond.'"

Cases are cited from a number of states in support of the ruling in Kelly v. Moore. In the Dierker case we find the following colloquy between the sheriff, Dierker, and the parties arrested:

"When they got to the station, Dierker, who had no warrant for Brennan or Tully, accosted them, and what transpired was thus stated by Brennan in his testimony: 'I was the first one to step on the platform—they had but one step off the track—and Mr. Dierker stepped up and said "Good evening," and we said "Good evening" to him. He said, "Have you been hunting?" and as I was somewhat disgusted with the day, I says, "I would be ashamed to disgrace the term by saying I have been hunting to-day." He says, "Well, I am sheriff of this county, and you can consider your-

self under arrest." I says, "Let's see your authority." He says "By God! I don't have to show you my authority." He says, "I am sheriff, and that's all there is to it." ' "

If the above is not a sufficient showing that the sheriff acted under color of his office, so as to hold the bondsman liable on his bond, then sureties are indeed favored pets of the law. The Dierker case, supra, followed the ruling in State to use v. McDonough, 9 Mo. App. 63. These two cases, by the Court of Appeals are not in harmony with State ex rel. v. Moore, 19 Mo. l. c. 371; State ex rel. v. Hope, 88 Mo. 430, and State to use v. Shacklett, 37 Mo. 280. In the latter cases the officers acted under void processes and the sureties were held liable. A void process is no process at all, and we see no distinction between the action of a sheriff acting under void process and that of one acting as sheriff without process. [Lammon v. Feusier, 111 U. S. 17.] We find a sufficient answer to these cases in Murfree, On Sheriffs, sec. 60, as follows:

"Sureties are not needed on a sheriff's bonds, if they are only to be held when he acts legally. They vouch for his acts, and bind themselves to make good any damage he may cause to any one while acting under color of his office."

Since the advent of surety companies the majority of bonds are signed by sureties for hire. The courts have adopted a different rule and hold sureties for hire to the terms of their bonds. [24 R. C. L. 965, 966, secs. 59, 60; State to use v. Cunningham (Miss.), supra; Martin v. Smith, 29 L. R. A. (N. S.) (Ky.) 463; Brown v. Weaver, 42 L. R. A. (Miss.) 423; Jackson v. Harries, 236 Pac. (Utah) 234, Lammon v. Feusier, supra.]

Applying the test, above quoted from Ruling Case Law, and considering the instant case in view of the more recent authorities, it is evident that Skow was acting under color of his official authority when he pursued the driver into St. Louis and shot plaintiff, while attempting to arrest the driver. The fact, that during this chase the parties crossed the county line, is only incidental to the main question. The gist of plaintiff's action is the unauthorized use of a deadly weapon in attempting to arrest the driver, who had committed a misdemeanor in the officer's presence. It was one continuous act, which commenced within the territorial jurisdiction of the constable and ended beyond the territorial limits. A case in point on a similar state of facts is, American Guaranty Co. v. McNiece (Ohio), supra. In that case the sureties were held responsible for the unauthorized shooting and assaulting of plaintiffs, while the officers attempted to execute a search warrant beyond the corporate limits of the city of Cambridge. The respondents attempt to evade the effect of that decision, by asserting that the Ohio Code

grants to police officers the power to arrest beyond the city limits. However, an analysis of the case will disclose that the court held the surety company liable irrespective of that power. Note the following language:.

"In the instant case the wrongful acts done would have been wrongful had they been perpetrated in the city of Cambridge, and, since the jury found they were perpetrated *colore officii*, it makes no difference where they were committed. We, therefore, do not determine the territorial jurisdiction of the mayor and safety director in enforcement of the Crabbe Act (General Code, secs. 6212, 6213, et. seq.)."

Immediately following this case in 39 American Law Reports, on page 1297, is the case of Geros v. Harries, supra. An interesting discussion and a review of authorities on the liability of the bondsmen of sheriffs and constables will be found on pages 1304 and 1305. The McNiece case was extensively quoted from, and approved in the case of Lynch v. Burgess, supra. The law clothes sheriffs, constables and police officers with the power of arrest. The primary purpose of the bond is to guarantee against the abuse of that power. The petition in this case states facts that clearly disclose an abuse of the official power of the deputy constable, Skow. The shooting was done while Skow was acting under the cloak of authority. The learned trial court erroneously sustained the demurrers to the petition.

The judgment of the circuit court is reversed and the case remanded for trial. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES C., is adopted as the opinion of the court. All of the judges concur.