STATE v. HARVEY BROWERS, Appellant.—No. 40257.—205 S. W. (2d) 721.

Division Two, November 10, 1947.

W. A. Brookshire for appellant.

*J. E. Taylor*, Attorney General, and *David Donnelly*, Assistant Attorney General, for respondent.

TIPTON, J.—An information was filed in the circuit court of Iron County, Missouri, charging the appellant and his brother, Irvin Browers, with the crime of felonious assault, under Section 4410, R. S. Mo., 1939. Their application for a change of venue was granted, and the cause was sent to Washington County where a severance was granted the appellant. The jury found the appellant guilty as charged and assessed his punishment at a fine of $100.00. From that judgment and sentence he has duly appealed to this court.

The appellant's first assignment of error is that the evidence is insufficient to sustain the verdict. We will, therefore, relate the evidence most favorable to the State. The evidence disclosed that on August 3, 1945, a trailer truck and a state guard jeep drove up on Highway No. 21 and stopped near the court house in Ironton, Missouri. The appellant got out of his truck and state guardsman Earl T. Lamons stepped out of the jeep. Appellant and Lamons began arguing about the appellant's driving his truck into the jeep some distance from Ironton. Lamons called to George Blue, the city marshal of Ironton. When Blue arrived near the scene of the argument, Irvin Browers jumped off the rear of the truck and said to Blue, "Don't you interfere, you s— o— b—." Blue pulled his revolver and told Irvin Browers he was under arrest. Blue testified, "He stood there a minute and I told him to get going. He said, 'Where are we going?' I said, 'We are going to jail.' He started walking and we went up in the crowd and he started circling in the crowd and when he did he run up against a tree. When he did that

1198

I hit him with a blackjack and he ▇▇▇ started running away. When he did, I shot in the ground trying to stop him and I jumped down in the street and when I did Harvey Browers jumped on my back and knocked me down . . . "

A state guardsman took the gun out of Blue's hand and someone took Harvey Browers off of Blue. Irvin Browers had crossed the street and had gone into a barber shop. Blue started after appellant with a gun in one hand and a blackjack in the other, and told him he was under arrest. Appellant grabbed a person in the crowd and held this person in front of him as a shield.

Blue testified on cross examination that appellant held this person to keep him, Blue, from hitting appellant with a blackjack; that he hit at appellant with the blackjack; that Irvin came back across the street and jumped on his back, knocking him down; and when he did this appellant took the gun away from Blue, shot three times in the ground, fired one shot into a building and then shot Blue in the side. Appellant then hit him with the butt of the gun, kicked him and stamped him. Blue also testified that when he told Irvin Browers he was under arrest that Irvin did not have a gun and did not resist him.

The evidence showed that Blue was bleeding about his face and that his chest bone was broken.

Appellant denied that he shot Blue and contended that Blue shot himself when Irvin jumped on his back. He testified that he grabbed Blue after he shot at his brother and finally got his gun to keep Blue from killing his brother.

▇▇▇ The evidence discloses no felony had been committed. If any crime had been committed, it was in the operation of appellant's truck before it reached Ironton, but the evidence does not disclose that to be a fact. Appellant contends that assuming a misdemeanor had been committed, Blue had no right to shoot at Irvin Browers, even though he was trying to escape, citing State v. McGehee, 308 Mo. 560, 274 S. W. 70 and State ex rel. Kaercher v. Roth, 330 Mo. 105, 49 S. W. 2d 109; and, also, since Blue had no right to arrest Irvin Browers, he had the right to resist such arrest with such force as was necessary to prevent it. If this be true, the fact remains that Blue's status at the time of the assault was that of a private citizen.

▇▇▇ As previously stated, the information was drawn under Section 4410, supra, and all that is required under that section are circumstances which would constitute murder or manslaughter if death had ensued. "All that is necessary under this section is that there shall be an unlawful wounding or the infliction of great bodily harm in cases and under circumstances not excusable or justifiable." State v. Janke, 238 Mo. 378, l. c. 383, 141 S. W. 1136. We think the evidence is sufficient to sustain a verdict under the information.

██ The appellant's next assignment of error is that instruction number one is erroneous. His complaint is that by this instruction "the jury was told that if the appellant used a pistol loaded with gun powder and leaden balls, and did then and there strike, beat or stamp George Blue he was guilty of a felony. The first part would warrant an instruction on felonious wounding, but the second part, in the absence of any qualifying term, could only mean a misdemeanor." In other words, appellant contends that since the jury was told to find that the striking, beating or stamping of Blue was not done with a deadly weapon that those facts would constitute only common assault.

We cannot agree with appellant. Appellant was charged with felonious assault under Section 4410, supra. We held in the case of State v. Nieuhaus, 217 Mo. 332, 117 S. W. 73, that the breaking of the skin constitutes a wounding within the meaning of that section. The instruction was therefore proper.

██ Appellant contends that the trial court erred in failing to instruct on the law of self defense. There is evidence in this case that Irvin Browers had not committed a crime, neither a felony nor a misdemeanor, and that city marshal Blue shot at him while trying to make an illegal arrest. In State v. McGehee, supra, we held that a person had a right to resist ██ an arrest with such force as is necessary to prevent the arrest if the officer had no right to arrest him. In State ex rel. Kaercher v. Roth, supra, we held that an officer is never justified in shooting at one guilty of a misdemeanor to effectuate his arrest or prevent his escape. Appellant testified that he attacked Blue after he shot at his brother to prevent him from killing his brother. If this is true, appellant had the right to use such force as was reasonably necessary to repel the assault on his brother. State v. Lemon, 263 S. W. 186; State v. Rennison, 306 Mo. 473, 267 S. W. 850; State v. Wright, 352 Mo. 66, 175 S. W. 2d 866; State v. Havens, 177 S. W. 2d 625. Since there was evidence to show self defense, it was the duty of the trial court to give a proper instruction on self defense, whether requested or not.

For the failure to give an instruction on self defense, the judgment of the trial court should be reversed and remanded. It is so ordered. All concur; *Ellison, J.*, in separate concurring opinion in which *Leedy, P. J.*, concurs.

██ ELLISON, J. (concurring).—I concur in the result, and the rulings of the principal opinion on the first and second assignments of error, and agree that the trial court should have given an instruction on self-defense as a part of the law of the case under Sec. 4070(4),[1] although the appellant did not request it, and raised the

---

[1] All references to our statutes are to R. S. Mo. 1939 and same section numbers in Mo. R. S. A.; and italics and parentheses in quotations are mine —all unless otherwise indicated.

1200

point for the first time in his motion for new trial. State v. Graves, 352 Mo. 1102, 1119(16), 182 S. W. (2d) 46, 56(26). But I think the instruction should have been given because there was substantial evidence showing the officer, Blue, used more force than was reasonably necessary in making the arrest, State v. Nolan, 354 Mo. 980, 991(7), 192 S. W. (2d) 1016, 1022(4)—and do not agree to the reason given in the principal opinion, namely, that no officer has a right to shoot in making an arrest for a misdemeanor, although the accused is trying to escape.

The two decisions[2] cited by the principal opinion in support of that holding were overruled in State v. Ford, 344 Mo. 1219, 1225-6, 130 S. W. (2d) 635, 639(3). However, in that case the officer had a warrant for the arrest of a misdemeanant, and the latter *resisted* and was shot and killed by the officer, the latter being the defendant in the ensuing prosecution for the homicide. In the instant case the officer did not have a warrant; he shot at but did not hit the misdemeanant while in *flight* (not resistance); and the misdemeanant's brother, the present appellant, interfered; shot and wounded the officer (as the State contends); and now invokes self-defense, or rather defense of his brother. The Ford case considered, but did not decide, what the law would be when the misdemeanant *flees*. There is enough difference in the facts of the two cases to call for further discussion of that question. In doing that it is necessary to review the facts immediately attending the arrest.

Most of them are sufficiently set out in the second paragraph of the principal opinion. But it should be further stated that when the guardsman Lamons was talking to appellant and his brother about their having just previously run into or sideswiped the guardsman's jeep and run it off the highway without stopping at the scene of the accident, etc., (as the evidence shows) in violation of Sec. 8401(f), one of the brothers said, "Hell yes, we run over them up here, we run over one last week"; and later said, "You had better go on or we will run over you again." Lamons said they "seemed belligerent." A witness Clark saw them from a distance and knew they were quarreling. And the appellant affirmatively testified his brother Irvin "had a little dispute" with city marshal Blue, who was 53 years old, whereas appellant and his brother were young men. Irvin Browers did not testify.

So we have this situation. When the marshal was attempting to arrest Irvin Browers, it must have been either for the sideswiping of the jeep without stopping at the scene of the accident, or for breach of the peace in quarreling with and threatening the two guardsmen, or the marshal himself, on the public and crowded street

---

[2]State v. McGehee, 308 Mo. 560, 274 S. W. 70, and State ex rel. Kaercher v. Roth, 330 Mo. 105, 49 S. W. (2d) 109.

in front of the courthouse. The first offense is a felony under Sec. 8404 (c), and the breach of the peace is a misdemeanor under Sec. 4636. See also: 5 C. J.; sec. 31, p. 401; 4 C. J. S., sec. 6c, p. 589; 4 Am. Jur., sec. 73, p. 52, sec. 74, p. 53.

If it was for the felony, the marshal had the right to make the arrest on reasonable suspicion, State v. Raines, 339 Mo. 884, 889(2), 98 S. W. (2d) 580, 583(3). And to justify that suspicion he had the statements of the two guardsmen, the fresh physical evidence afforded by the damaged or disfigured jeep, itself, and the attitude and conduct of the appellant and his brother Irvin. If it was the misdemeanor he needed to have a warrant, or the offense must have been committed in his view, as was the undisputed fact. State v. Burnett, 354 Mo. 45, 48(1), 188 S. W. (2d) 51, 53(1); State v. McBride, 327 Mo. 184, 188(5), 37 S. W. 423, 425(5).

 Assuming the arrest here was for the misdemeanor of breach of the peace—which concededly was committed in the marshal's presence—is the broad holding of the principal opinion correct, that no officer has a right to shoot in making an arrest for a misdemeanor? Or, putting the question more narrowly, is that true when the offense is breach of the peace, and the misdemeanant is merely fleeing, and not resisting by physical violence? In my opinion the rights of the officer are governed by specific statutes to be referred to presently.

The reasoning of the Kaercher case, supra, marginal note 2, cited by the principal opinion, for withholding the officer's right to shoot a misdemeanant in flight, is as follows: "As the lawmaking power itself could not inflict the death penalty as a punishment for a misdemeanor, 'it would ill become the "majesty" of the law to sacrifice a human life to avoid a failure of justice in the case of a petty offender who is often brought into court without arrest and dismissed with a nominal fine.' "

This doctrine implies that the officer should not have the right to shoot and kill in making an arrest, unless the crime charged is a capital offense, or at least *not* such as is punishable in a minor way, as by a small fine. But the rule is well established, as to any felony, that the officer may use such force as is reasonably necessary to effect the arrest, even to the point of killing the accused.[3] And of the hundreds (probably) of statutory felonies in this state only four are capital offenses.[4] A felony is simply an offense *punishable* by imprisonment in the penitentiary. Sec. 4864. And in a great many of these the punishment is graduated down to much less than could be imposed for a misdemeanor. Thus, as it happens, of the two offenses involved

---

[3] 4 Am. Jur., sec. 80, p. 56; 26 Am. Jur., sec. 232, p. 316; 5 C. J., sec. 60, p. 425; State v. Havens (Mo. Div. 2), 177 S. W. (2d) 625, 627-8(4).

[4] Murder in the first degree, Sec's. 4376, 4378; rape, Sec. 4393; robbery in the first degree by means of a dangerous and deadly weapon, Sec. 4453; and treason, Sec. 4267.

1202

in this case, the punishment for disturbing the peace is fixed by Sec. 4853 at jail imprisonment not exceeding one year, or a fine not exceeding $1,000, or both; whereas the punishment for the felony of leaving the scene of a motor vehicle accident can run as low as a fine of $1 under Sec. 8404(a).

Now turning to our specific statutes governing arrests and the force an officer may use in making them. As to breach of the peace, the third clause of Sec. 4379 provides a homicide shall be deemed justifiable "when necessarily committed . . . in lawfully keeping or preserving the peace." The general statute, Sec. 3960, provides: "If, after notice of the intention to arrest the defendant, he *either* flee or forcibly resist, the officer may use all necessary means to effect the arrest." This section is in the Article on Process, and covers both felonies and misdemeanors. As will be noted, it makes no distinction between a culprit in flight and one who resists. The officer's right is the same in both instances.

And the immediately preceding Sec. 3959 provides: "An arrest is made by an actual restraint of the person of the defendant, or by his submission to the *custody* of the officer, under authority of a warrant *or otherwise.* The officer must inform the defendant by what authority he acts, and must also show the warrant if required." The words "or otherwise", show this section is not confined to arrests made on a warrant, but applies also when an arrest may properly be made without a warrant, as is so often true of breach of the peace. The section also shows a person under arrest is in the "custody" of the officer.

Correlatively, Sec's 4291, 4292 denounce resistance to an officer in making an arrest by the service of a warrant, or *"in the discharge of any official duty,"* which would cover arrests without a warrant in proper cases, for it is the officer's official duty to make such arrests, and he is subject to punishment if he wilfully or corruptly fails to make them. Sec. 4315. Aiding a prisoner to escape from the "custody" of an officer is likewise denounced by Sec. 4304.

It cannot be denied that if the initial arrest of Irvin Browers in this case was "lawful", then he had no right to flee after he had submitted to arrest, nothwithstanding he protested once that he "hadn't done anything to be arrested for." He knew the facts preceding the arrest, and they are undenied. Likewise, if the arrest was lawful, his brother, the appellant Harvey Browers, who knew the officer was city marshal and deputy sheriff and all the preceding circumstances, had no right to resist the arrest, and could not do so on the ground of self-defense: State v. Cushenberry, 157 Mo. 168, 183(7), 56 S. W. 737, 743(7); State v. Noland (Mo. Div. 2), 229 S. W. 198, 199(2); State v. Lowry, 321 Mo. 870, 882(6), 12 S. W. (2d) 469, 473(7); State v. Batson, 339 Mo. 298, 304, 96 S. W. (2d) 384, 388(5);

State v. Nolan, 354 Mo. 980, 988(3), 992(8), 192 S. W. (2d) 1016, 1020(7), 1023(16).

In my opinion the record is devoid of any evidence tending to show the grounds for the arrest of Irvin Browers were insufficient to make it legal. But there is evidence that the officer used more force than was reasonably necessary in attempting to maintain the arrest. Officer Blue testified that when Irvin Browers broke away from him and fled across the street to the barber shop, he (Blue) fired his revolver once into the pavement. But two State's witnesses, one of them being the guardsman Lamons, testified he fired in the direction of the fleeing man, and a number of defense witnesses said the same. This was before the officer had made any effort to apprehend the fugitive by pursuit or other means. And after the appellant Harvey Browers had interfered, and then taken refuge behind a bystander, there is testimony from several witnesses that officer Blue called him a s-o-b, and threatened to kill him, indeed, both him and the bystander. After that the struggle ensued between appellant and the officer, in which the State contends the latter was shot. This was sufficient to justify an instruction on self-defense in behalf of the appellant. 4 Am. Jur., sec. 73, p. 52; 5 C. J., sec. 59, p. 424; 6 C. J. S., sec. 13a, p. 612; State v. Havens, supra, 177 S. W. (2d) l. c. 628(5); State v. Nolan, supra, 354 Mo. l. c. 992(7), 192 S. W. (2d) l. c. 1022(14). *Leedy, J.,* concurs.