STATE of Missouri, Respondent,

v.

Tony ROSE, alias Tony Roselli, Appellant.

No. 48346.

Supreme Court of Missouri,

Division No. 2.

May 8, 1961.

William H. Ergovich, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Fred E. Schoenlaub, Sp. Asst. Atty. Gen., for respondent.

EAGER, Judge.

Defendant was indicted by a grand jury for the crime of felonious assault with malice, and with a deadly weapon. He was found guilty by a jury of felonious assault. Section 559.190, RSMo 1959, V.A.M.S. The punishment imposed was one year in jail and a fine of One Thousand Dollars. The assault was upon one Harold Andrews. After defendant's motion for a new trial was overruled and sentence duly imposed,

this appeal was taken. No brief has been filed here for the defendant, so we consider the three assignments of his motion.

■ In considering the sufficiency of the evidence, we look to that evidence favorable to the State and the reasonable inferences therefrom. State v. Sheard, Mo., 276 S.W.2d 196, 200, and cases cited; State v. Sarkis, Mo., 313 S.W.2d 723, 724. Defendant was a used car dealer with a place of business on Truman Road in Kansas City; this was operated under the name of Central Motors. One Clifford Clary negotiated with defendant for a used pickup truck in February 1959; defendant did not have such a truck but located one at Askew Motors (operated by Robert B. Turner) also on Truman Road, and persuaded Clary to take the truck and a used Ford car. Clary took both and turned in a 1953 DeSoto, signing the papers which were presented to him. He used the car and truck for a time but then learned, so he testified, that he had signed a deed of trust on his home as well as a chattel mortgage. He consulted his attorney, conferences followed, and it was agreed that he, Clary, would return the two vehicles on the afternoon of March 7, 1959. In the meantime, according to Turner, the finance company had stopped payment on its check or checks because of a complaint by Clary. On March 7, Clary started out to return the vehicles; his father rode with him in the truck, and a neighbor and friend, Harold Andrews, drove the Ford for him; Andrews was accompanied by his wife. At Central Motors they were directed to take the vehicles to Askew Motors; there they were motioned to drive them on to the lot. They did so, and proceeded to get out. Almost immediately a violent argument ensued between Turner and Clary, perhaps with certain employees of Turner participating. Clary wanted a receipt signed, wanted his papers back, and wanted his car; Turner refused to sign anything, complained of the condition of the vehicles, and ordered all of them off of the lot, telling them to get off while they were able. Clary started to

the office to use the phone, was refused the use of it, and went next door where he called the police and tried to call his attorney. In the meantime defendant Rose had appeared on the scene, and approached Andrews who was standing nearby with one or both of his hands in his pockets; defendant asked Andrews what he had "in the deal"; Andrews told him nothing, and that he "didn't want anything in it." Andrews and his wife moved over to the side of the lot and defendant left for a time, but came back to Andrews, repeated his question and got substantially the same answer. Then, according to Andrews, and with no more conversation, the following occurred: defendant turned as if to walk off, but jerked his right hand out of his pocket; Andrews heard a "click," defendant whirled, called Andrews a profane and vulgar name and said, "I am going to kill you right here"; thereupon defendant struck at Andrews with a knife, Andrews dodged and the knife barely brushed his coat; defendant drew his arm back as if to strike again, but the elder Clary and an employee of Turner grabbed defendant and he dropped the knife. Defendant then promptly proceeded to shove Andrews up against a car and struck him repeatedly with his fist or fists. There is some uncertainty as to whether Andrews could or did fight back; he stated that in the fracas he was unable to get his hands out of his "pocket." Be that as it may, the evidence showed without objection that a bone in Andrews' jaw was broken, that he was bleeding at the mouth and nose, his face was swollen and a rib was injured. Rose then left the lot, before the police came. On cross-examination Andrews testified that at one time defendant said, "Go ahead and pull that out of your pocket," but that he did not even know that "they thought" he had a knife until later. He did have an ordinary pocketknife in his pocket; this he carried regularly and used in his trade as a carpenter. No one testified that Andrews drew or exhibited the knife to anyone at any time during the controversy. Clary had testified in his deposition that Andrews

did not have a knife; at the trial he sought to explain this by saying that he was "tangled up." Andrews testified that when Turner told the police that he, Andrews, "pulled a knife," he denied the statement and showed the policeman his pocketknife; that the latter laughed and handed it back to him.

In view of an assignment of error on the failure to give an instruction, we look briefly at the defense testimony. Rose did not testify. Turner did testify as follows: that he had been arguing with Clary; that Andrews said, gruffly, that he wanted the release signed or he was not going to leave; that he, Turner, ordered him to leave; that Rose had arrived and talked to Clary; that Andrews had "moved over" to another car, and Turner had started away when an argument erupted; that someone yelled— "look out, he is going for a knife"; that "as he went for a knife," Rose went "by me" and grabbed Andrews and hit him, and then "he [Rose] stepped back and he pulled a knife"; by that time Turner "had whirled around" and he went back to where they were; that thereafter, in a verbal exchange between Rose and Andrews, the latter admitted having a knife, and Turner *thought* he had it "in his right hand, in his pocket"; that Rose hit Andrews again and "the fight started." Turner insisted that he shoved people away to keep them from getting hurt, that he tried to separate the combatants, and that he was hit in the back of the head by someone, presumably because of poor aim. Turner expressed no apprehension of danger to himself and no anticipated need for protection. There was evidence from two employees of Turner who were some distance away, of hearing a call or cry that "somebody was going for a knife," or "Look out, he's got a knife."

■ Defendant's first point is that there were insufficient facts to justify "a charge of assault with intent to kill." While defendant was indicted for assault with a knife, with malice, and with intent to kill, he was convicted only of felonious assault without malice, a lesser crime in magnitude and punishment. Sections 559.-180, 559.190, RSMo 1959, V.A.M.S. Instructions were given covering both crimes; and a conviction of the lesser crime is permissible upon an indictment for the greater. State v. Parrish, Mo., 214 S.W.2d 558, and cases cited; State v. Gill, Mo., 64 S.W.2d 264; State v. Gaddy, Mo., 261 S.W.2d 65, 66; State v. Swiney, Mo., 296 S.W.2d 112. We are concerned here only with the sufficiency of the evidence to prove the lesser crime. The State was merely required to show an unlawful assault, with intent to kill or do great bodily harm. The instruction given thereon hypothesized an assault with the fists, with intent to do great bodily harm. There was ample evidence to prove that offense. State v. Gillespie et al., Mo., 336 S.W.2d 677; State v. Spradlin, 363 Mo. 940, 254 S.W.2d 660. In those cases aggravated assaults with the fists were held sufficient, even under § 559.180. The evidence favorable to the State most assuredly justified the submission and the conviction for felonious assault.

■ The second assignment is that the court erred in failing to give an instruction on defendant's right to act in protection of Robert Turner. The court did give a full and complete instruction on self-defense, of which no complaint is made. The question of defendant's right to that instruction is not before us. Defendant offered no instruction declaring his right to protect Turner, but we shall assume, merely for the purpose of this case, that such an issue, if present, would be a part of the law of the case. The issue of self-defense is held to be such (State v. Spencer, Mo., 307 S.W.2d 440, 443; State v. Browers, 356 Mo. 1195, 205 S.W.2d 721, 722; State v. Singleton, Mo., 77 S.W.2d 80, 83) and probably the defense of another would fall into the same category. Browers, supra. In Browers, however, those two issues seem to have been somewhat indiscriminately intermingled in both opinions. But, in any event, there must be substantial evidence justifying and requiring the instruction.

Singleton, supra; State v. Tolias, Mo., 326 S.W.2d 329, 334–335; State v. Jenkins, Mo., 178 S.W. 91. There was nothing in the State's evidence which would support the submission of an issue involving a defense of Turner. We have examined Turner's own testimony in detail and have concluded that it, likewise, fails to make any such showing. Turner *thought* that Andrews had a knife in his pocket; he said that *after* Rose struck Andrews, and pulled out his own knife, Rose said to Andrews, "So you've got a knife," and that Andrews replied, "Yes, I have got one," but it was not shown that Andrews expressed or indicated any intention whatever of using it; no knife was ever drawn or exhibited by Andrews, but Rose nevertheless proceeded to beat him vigorously. Turner had started away from the argument, turned and came back and, according to his testimony, tried to push away the spectators and separate the combatants. The testimony that someone yelled "Look out, he is going for a knife" is so vague as to be substantially meaningless, particularly in view of the evidence that Rose did draw a knife and strike at Andrews with it, and the absence of evidence that Andrews ever attempted to draw one. If Turner's statement—"as he went for a knife," was intended to refer to Andrews, it is shown by the specific testimony to be a mere speculation. There was no substantial evidence to require or justify an instruction permitting the jury to find that defendant had reasonable cause to believe and did believe that it was necessary for him to assault Andrews in order to protect Turner. Rose did not testify; Andrews did testify at length (though rather ambiguously) but he did not express any apprehension whatever of danger to himself or any anticipated need for protection; nor were there any facts in evidence which reasonably showed either. No such instruction was necessary.

■ The last point is that comments and expressions of the prosecutor to the effect that defendant had used a "switchblade knife" were made to mislead and inflame the jury, when, in fact, there was no credible evidence "of such a knife." The reference is apparently to a question asked during the cross-examination of Mrs. Andrews as a part of the following:

"A. My husband looked at me kind of dumbfounded and he said, 'I don't —I am not going to pull anything out of my pocket' And Rose turned around like he was going to leave and he whirled on around and as he did I heard a click and when he did I seen this knife flash.

"Q. You heard the click of a switchblade knife?

"Mr. Ergovich: Your Honor, I object to that as inflammatory and prejudicial. There is no testimony there was a switchblade knife here.

"The Court: I will sustain your objection."

There are two independent reasons why this occurrence did not constitute reversible error. First, the objection to the question was sustained, and defense counsel asked for no further relief whatever. We do not convict a trial court of error in failing to do something which it was not asked to do. Secondly, defendant was convicted of felonious assault under an instruction which did not hypothesize the use of any knife, but only of the fists or hands. The use of a knife was hypothesized under another instruction submitting the crime of assault with malice; on this, defendant was not convicted. Under these circumstances we may not hold that, in any event, the asking of the question was prejudicial. The trial court evidently felt the same way, for it overruled the motion for new trial.

We have examined those matters which we are required to examine under Rule 28.02, V.A.M.R., and we find the indictment, the verdict, and the judgment and sentence sufficient. The judgment is affirmed.

*All concur.*