CITY OF ST. LOUIS (Plaintiff), Respondent,

v.

Earl PENROD (Defendant), Appellant.

No. 30271.

St. Louis Court of Appeals.

Missouri.

Feb. 16, 1960.

Schomburg & Marshall, Richard M. Marshall, Glen C. Schomburg, Gerald K. Rabushka, St. Louis, for appellant.

Thos. J. Neenan, City Counselor, David S. Hemenway, Asst. City Counselor, St. Louis, for respondent.

RUDDY, Judge.

Defendant was charged in City Court No. 2 of the City of St. Louis with resisting a police officer of said City, while the said officer had the defendant under arrest and in custody, which was alleged to be in violation of an ordinance of said City. Defendant was found not guilty in the City Court and the City of St. Louis appealed to the St. Louis Court of Criminal Correction. There was a waiver of trial by jury in said court. After a hearing defendant was found guilty and he has appealed to this court.

The first point relied on by defendant is that the lower court erred in overruling his motion to dismiss on the ground that the St. Louis Court of Criminal Correction lacked jurisdiction because he had previously been acquitted in the City Court of St. Louis. Defendant cites the provisions of Sec. 479.100 RSMo 1949, 27 V.A.M.S., in support of his contention. This section of the statutes has no application to the facts and procedure of this case. The instant case does not involve separate prosecutions, one in the St. Louis Court of Criminal Correction for a misdemeanor, and one in the City Court of St. Louis for the violation of a city ordinance. It only involves an appeal by the City of St. Louis from an adverse decision by the City Court of said city on a charge against defendant of violating a city ordinance. There is no attempt to prosecute a misdemeanor under the laws of this state in the St. Louis Court of Criminal Correction. As said, the action tried in the St. Louis Court of Criminal Correction was an appeal by the City of St. Louis from the decision rendered in the City Court of said city. Nothing we say herein is to be construed as a holding that a separate prosecution in each court, even though both rest on the same foundation of facts, is not permissible. City of St. Louis v. Mueller, Mo.App., 313 S.W.2d 189; State v. Jackson, Mo.App., 220 S.W.2d 779. We do not have that question encompassed within the facts of this case. We merely point out that only one offense is charged and that there is only one prosecution, that by the City of St. Louis. Therefore, section 479.100, supra, has no application.

Section 3 of Article XII of the Charter of the City of St. Louis (1914), of which we take judicial notice (Constitution of Missouri, 1945, Article VI, Sec. 33, 2 V.A.M.S.) provides as follows:

"The city courts shall have jurisdiction of all cases arising under this charter or any ordinance, *subject to appeal by the city* or the defendant to the St. Louis court of criminal correction in like manner as provided by law for appeals from justices of the peace in criminal cases to their appellate courts * * *." (Emphasis added.)

The appellate jurisdiction of the St. Louis Court of Criminal Correction of appeals from the City Courts of the City of St. Louis is stated in section 479.110 RSMo 1949, 27 V.A.M.S., as follows:

"The court shall have and exercise exclusive appellate jurisdiction in all cases appealed from city police courts in the city of St. Louis, and all such appeals shall be taken in the manner and form prescribed by section 543.290, RSMo 1949, for misdemeanor cases appealed from the magistrate court, except that the application for appeal shall be filed immediately after judgment."

It is the settled law of this state that a prosecution for the violation of a city

ordinance is a civil action. While the primary object of the ordinance may be to punish, a prosecution for a violation thereof is, nevertheless, civil in form, despite its resemblance to a criminal action in its effects and consequences. City of Webster Groves v. Quick, Mo., 319 S.W.2d 543; City of Clayton v. Nemours, 237 Mo.App. 167, 164 S.W.2d 935. Because it is civil in form, the right of the City to appeal, which right is given to it in § 3 of Article XII of the Charter of the City of St. Louis, has been upheld the same as in the case of any other party to a civil action who is aggrieved by the judgment in favor of its adversary. City of St. Louis v. Mueller, supra; City of Clayton v. Nemours, supra. The St. Louis Court of Criminal Correction had jurisdiction of the appeal taken by the City of St. Louis.

For his next point defendant contends that the court erred in overruling his motion to dismiss because the evidence failed to show a lawful arrest and, therefore, there could be no offense of resisting arrest. The City of St. Louis contends the officers had reasonable grounds to make the arrest.

In support of the charge the City of St. Louis offered two witnesses, Detective Sergeant John Walsh and Detective Tom Crowe, officers of the St. Louis Police Department. On May 31, 1958, about 11 A.M., both officers were in civilian clothes and were riding in an unmarked automobile in the vicinity of Union and Wells Avenues in the City of St. Louis. They saw defendant walking westwardly on Wells Avenue on the north side of the street accompanied by a boy about 8 years of age. Detective Crowe was driving the police car and Sergeant Walsh was seated beside him in the front seat. Detective Crowe had seen defendant in Forest Park "around the rest room" on several occasions. He did not say when those occasions occurred. The attorney for the City of St. Louis asked Detective Crowe if he "had arrested him (defendant) for child molestation." At this point the court interrupted the interrogation with a question. There is nothing in the officer's answer to the court's question or to any other question that indicates the officer ever arrested defendant for child molestation or for any other offense.

After seeing defendant on Wells Avenue in the company of the boy, Detective Crowe stopped the police car, got out of the car and approached defendant. Later, Sergeant Walsh got out of the car and both officers asked defendant where he was going with the boy. Defendant told them the boy was his nephew and that he was taking him to his (defendant's) mother's home. The officers then questioned the boy. He refused to answer their questions until defendant instructed the boy to do so. The boy then told the officers defendant was his uncle and that he was being taken to the home of defendant's mother. The officers then told defendant and the boy to proceed to their destination. Detective Crowe testified that when he approached defendant he showed his officer's badge to defendant. He said he asked defendant if he knew him and defendant told him that he did.

After the officers told defendant and the boy to proceed, they got back into the police car and defendant and the boy proceeded to walk westwardly on Wells Avenue. When defendant and the boy arrived at the western end of the block they stopped, turned, and looked in the direction of the police car. After a while defendant walked eastwardly in the direction of the police car. When defendant was abreast of the police car Sergeant Walsh instructed Detective Crowe to have the defendant show "some identification." In connection with the alleged arrest and resistance the record shows the following testimony given by Sergeant Walsh. " * * * Tom alights from the police car and steps to the sidewalk, and told him (defendant) he wanted to see some identification, * * * about that time he grabbed Tom Crowe and by the front part of the coat, at that time Tom told him he was under arrest, get in the police car ' * * *." At another place in his testimony, Sergeant Walsh said "he grabbed Tom Crowe by the coat and Tom

told him he was under arrest * * * I jumped out of the car * * * and ran up to where this was taking place, and about that time, I would say the resistance stopped, and we placed him in the back of the car * * *."

Detective Tom Crowe testified Sergeant Walsh asked him if he was sure he knew the defendant. Detective Crowe told Sergeant Walsh he had seen defendant several times in Forest Park around the rest room. Sergeant Walsh then instructed him to have defendant show some identification. Detective Crowe then testified that he got out of the police car and asked defendant for his driver's license and defendant told him he was not going to show him anything. He further testified that he told defendant "you are under arrest until we clear up the matter * * *." Detective Crowe further testified that defendant then grabbed for his arm and when that occurred he and Sergeant Walsh pushed defendant into the back seat of the police car. In his cross-examination Detective Crowe said defendant "was under arrest when he grabbed at me or pushed me * * *."

Defendant in his testimony said he was walking westwardly on Wells Avenue with his young nephew when suddenly a car pulled abreast of them and stopped at the curb. The car was two-tone in color and had no markings indicating it was a police car. He said a man got out of the car and started asking questions and wanted to see his driver's license. He asked the man why he wanted to see the driver's license and, thereafter, the man wanted to know about the boy and he (defendant) told him it was his nephew. The man then told him to go on and he and his nephew continued to walk westwardly. Defendant further testified that the man never told him he was a police officer and showed no badge. He said the man was wearing civilian clothes and sunglasses. After walking westwardly a bit he decided to get the license number of the automobile and walked back to the car for that purpose. He said when he returned to the car both men got out of the

car and asked him to show his driver's license. They then turned to the nephew and were asking him questions when "the two grabbed me, shoved me in the back seat of the car and let the boy on the street alone and took me down to the Twelfth Street station."

Defendant further testified he learned they were police officers after he was placed in the car. He testified that in 1952 Detective Crowe, then in uniform, interrogated him in Forest Park and as a result of the circumstances of that interrogation he and his mother complained to the Chief of Police, who sent them to the Captain in charge of the Newstead District Station, where they again stated their complaint about Detective Crowe. Defendant further testified that about eight months later Detective Crowe stopped him and wanted to know why defendant complained to Crowe's superiors. He further testified that on the way to the station on the occasion of the instant arrest Detective Crowe asked defendant "why he had turned him in."

The testimony of Ronnie Penrod, nephew of the defendant, was essentially the same as that of the defendant.

In the case of Commission Row Club v. Lambert, Mo.App., 161 S.W.2d 732, loc. cit. 735, we said:

"The police of the City of St. Louis have been given wide powers by the legislature to preserve not only the peace but the good morals of the city * * *. Of course, this does not imply that under the guise of performing their duties the police may without suspicion that the law was being violated invade the premises of anyone. * * * they are authorized to arrest persons on grounds of reasonable suspicion that they have committed an offense."

Again, in the case of City of St. Louis v. Ward, Mo.App., 223 S.W.2d 847, loc. cit. 849, we said:

" * * * our Supreme Court has held that the right of arrest by police officers in the City of St. Louis under Section 7691, R.S.Mo1939, Mo.R.S.A. § 7691, (now Section 84.090 R.S.Mo. 1949, 6 V.A.M.S.) is lawful when the police officers have reasonable grounds to believe that an offense against the law has been committed by the person arrested." (Citing cases.) (Parenthesis ours.)

In the instant case the City of St. Louis contends that there were three factors which were within the knowledge of Detective Crowe at the time of the arrest, which show reasonable grounds for the arrest of defendant, namely, (1) defendant had a reputation for frequenting restroom areas in Forest Park and had been arrested for child molestation; (2) defendant had a small boy with him at the time the officers acted; and (3) defendant did not continue on to his home, although he had informed the officer that was his intent. The City contends that these factors were reasonable grounds for the arrest of defendant on suspicion of a felony, to-wit: Molesting a Minor (Sec. 563.160 RSMo 1949, 41 V.A.M.S.)

The record in this case falls short of any proof to support the first factor urged by the City. There was no testimony admitted that tended to show defendant had a reputation for frequenting the restroom areas in Forest Park. The only testimony pertinent to the defendant's presence in the restroom area of Forest Park was that of Detective Crowe. He said he saw defendant in that area on several occasions, but did not give the dates of those occasions. It will be remembered that defendant testified one occasion took place six years before the instant arrest. Also, the fact that Detective Crowe saw defendant in this area of Forest Park is of no consequence, absent some misconduct on the part of defendant or the commission of an offense by him on those occasions. Certainly the mere use of the public restroom in Forest Park is not grounds for an arrest.

The testimony of Detective Sergeant Walsh and Detective Crowe does not show any arrest of defendant by either of them at any time for child molestation or for any other offense. Nor does it show knowledge of an arrest by any other officer of the police department. The fact was Sergeant Walsh did not know defendant before the instant arrest.

The testimony of the two detectives shows they evidently realized they had no reasonable ground to believe an offense against the law had been committed by defendant when they stopped him the first time. Nothing happened thereafter to give the officers reasonable grounds for believing defendant had committed or was about to commit an offense. It may be that defendant used poor tact in returning to get the license number of the unmarked car, but, such lack of tact can never constitute a reasonable ground for an arrest. The act of defendant in returning to obtain the license number did not mean he was not going to take the nephew to his home.

The fact that defendant failed to produce his driver's license, if in fact he had one, was not cause for an arrest, when defendant was not being stopped or apprehended for a traffic violation.

The City of St. Louis produced no evidence that defendant had ever been arrested for or convicted of any offense. No warrant for defendant's arrest had been issued. The officers had no report of the commission of a felony or any offense by anyone bearing defendant's description. Nor was there any evidence that defendant was about to commit an offense or had committed one in the presence of the officers. The evidence shows no reasonable grounds to suspect defendant of having committed or that he was about to commit an offense against the law. The lack of sufficient reasonable grounds makes the arrest unlawful. State v. Cuezze, Mo., 249

S.W.2d 373; Russo v. Miller, 221 Mo.App. 292, 3 S.W.2d 266; Commission Row Club v. Lambert, supra.

 Where the arrest is unlawful, defendant had the right to use such force as was reasonably necessary to prevent it. State v. Browers, 356 Mo. 1195, 205 S.W. 2d 721; State v. McGehee, 308 Mo. 560, 274 S.W. 70. There is some conflict in the testimony of the two officers as to whether the alleged resistance preceded or followed the attempted arrest. We need not decide that question. We rule there could be no offense of resisting arrest when the arrest of defendant is unlawful. State v. McGehee, supra, 6 C.J.S. Arrest § 13, p. 613.

The judgment of the St. Louis Court of Criminal Correction is reversed and defendant is discharged.

WOLFE, P. J., and ANDERSON, J., concur.