CITY OF ST. LOUIS, a Municipal Corporation, Plaintiff-Appellant,

v.

Noble Woodson EVANS, Defendant-Respondent (two cases).

CITY OF ST. LOUIS, a Municipal Corporation, Plaintiff-Appellant,

v.

William Merrick HOURIGAN, Defendant-Respondent (two cases).

Nos. 48018–48021.

Supreme Court of Missouri,

Division No. 1.

Sept. 12, 1960.

Thomas J. Neenan, City Counselor, Eugene P. Freeman, Associate City Counselor, William M. Austin, Asst. City Counselor, St. Louis, for appellant.

Carl E. Starkloff, St. Louis, for respondents.

DALTON, Judge.

This is an appeal by the City of St. Louis from judgments of dismissal in each of four prosecutions instituted by informations filed agaist defendants for violation of particular ordinances of the City of St. Louis. As to the city's right of appeal, see City of St. Louis v. Penrod, Mo.App., 332 S.W.2d 34, 35.

While the record does not disclose it, we assume that these cases were originally filed in the City Court (Police Court) and appealed by the losing party to the St. Louis Court of Criminal Correction. In any event the four cases, two against each defendant, reached that court and were consolidated for trial upon the statement of the Assistant City Counselor that each of these cases arose out of the "identical fact situation." The appeals have also been consolidated in this Court.

The first case against each defendant is based upon an alleged violation of "Ordinance No. 44886, Vol. 2, Part 1, Ch. 1, Sections 14 and 56, approved 2/28/49" in that on the 8th day of July, 1959, the named defendant "did then and there wilfully and unlawfully fail to allow an authorized agent of the Building Commissioner of the City of St. Louis to enter upon the premises known as 4047 Delmar Ave., St. Louis, Missouri, for the purposes of performing his duty as inspector * * *."

The second case against each defendant is based upon an alleged violation of "Ordinance No. 44886, Vol. 1, Ch. 46, Sections

36 and 45; Ch. 1, Sec. 16, approved 2/28/49" in that on the 8th day of July, 1959, the named defendant "did then and there wilfully and unlawfully hinder and obstruct an authorized City Officer * * * a Building Inspector, for the City of St. Louis, in the performance of his official duties as inspector * * * and unlawfully prevent a Building Inspector, for the City of St. Louis from inspecting the premises known and numbered as 4047 Delmar Blvd., St. Louis, Missouri * * *."

After hearing the evidence in support of the first and second charges against each defendant, the court found that the City of St. Louis did not have the lawful authority to enact Section 14, supra, upon which the first charges were based. As to Section 36, supra, upon which the second charges were based (the other sections referred to are penalty sections) the court found that the city had no lawful authority to require defendants to refrain from interfering with a city officer when such officer was attempting to make an inspection of premises controlled by the defendants, when the inspection was for the purpose of carrying out duties imposed on said officer by other ordinances of the city relating to public health, safety, and welfare; and that Section 14, supra, and said Section 36, supra (to the extent that Section 36 required the defendants not to interfere with the officer's inspection for the mentioned purposes), were both null and void and violative of Article 1, Sections 15 and 19 of the Constitution of Missouri, V.A.M.S., and the 14th Amendment to the Constitution of the United States. Defendants were ordered discharged from all four cases.

In view of the issues presented this Court has jurisdiction of the appeal. Section 3, Article V, Constitution of Missouri 1945.

In the trial of the cause, over the objection of defendants, the city was permitted to offer evidence tending to show: (1) that on October 11, 1957, the Department of Public Safety, Division of Building and Inspection of the City of St. Louis issued a "Certificate of Occupancy" to the defendant Wm. Hourigan for the property at 4047 Delmar and certified that the property was "in the G commercial zoning to be used for Rooming House"; (2) that the certificate was issued pursuant to an application for a permit *for occupancy* filed by defendant Hourigan on October 10, 1957; (3) that on the same day, October 10, 1957, defendant Hourigan filed an application with the Board of Public Service, Department of Public Safety, for a permit *to operate* a rooming house in the mentioned premises at 4047 Delmar; (4) that an inspection was made of the property subsequent to the filing of the two applications; (5) that the inspection, on the application made to the Board of Public Safety, was made on May 12, 1958, by William E. McCullough, Inspector; (6) that on May 26, 1958, a notice was sent from the Building Commissioner's office to defendant Hourigan advising him of the result of the inspection of May 12, 1958, which notice set out certain conditions to be corrected in order to comply with the requirements of city ordinances governing rooming houses, and advised that certain items were to be corrected in 14 days and, if made, a recommendation for a permit to operate a rooming house would be made and applicant given 90 days to meet additional requirements of the ordinances as thereinafter set out; (7) that, thereafter, an inspection of the premises was made on October 1, 1958, and it appeared that the letter of May 26, 1958, had not been complied with, "nothing done"; (8) that on October 24, 1958, defendant Hourigan was advised of the report of the inspection made on October 1, 1958, and notified that, if certain requirements of the ordinance were not satisfied within 14 days "action will be taken to deny your permit," other requirements to be met in 90 days were again set out; (9) that, thereafter, inspections of the premises were made on November 7, 1958, and on November 28, 1958, and a report filed by inspector McCullough showing that the letter of October 24, 1958, had not been complied with; (10) that on December 30, 1958, a request

was sent by the Building Commissioner to defendant Hourigan requesting him to appear at the Building Commissioner's office on January 8, 1959, "to show cause why a recommendation should not be made to the Board of Public Service to immediately deny your permit and the case referred to the City Counsellor for court action"; (11) that defendant Hourigan did not attend the mentioned hearing and, on January 15, 1958, the Building Commissioner made a report to the Board of Public Service that the application of defendant Hourigan to operate a Class 3 Rooming House at 4047 Delmar be refused because the "establishment is not constructed and equipped as to comply with the provisions of Ordinance 48338" (the requirements not met were stated in detail in the report); and (12) that, thereafter, on January 20, 1959, the Board of Public Service denied defendant Hourigan's application for a permit *to operate* a Class 3 Rooming House at 4047 Delmar and notice was mailed to said defendant on January 23, 1959, and received by him on January 24, 1959. The notice contained a statement that defendant Hourigan could request a hearing, before the Board of Public Service if he made the request in 10 days from the date of the letter.

The foregoing evidence was offered by the City of St. Louis on the theory that it was "attempting to show the court the background and justification for the inspection which gave rise to the right on the part of these inspectors to make such inspection"; that the building inspectors were performing a duty under the ordinances; and that there was a factual background for the inspection.

Thereafter, without objection, Robert Streator, Building Inspector in the Building Commissioner's office of said city, testified that on July 8, 1959, he ordered an inspector to visit the premises at 4047 Delmar to check on whether or not "an occupancy permit ought to be issued." On cross-examination, he admitted that such a permit had been issued, to wit: "a Certificate of Occupancy," indicating that *no violation of the zoning regulations existed.*

There was other evidence that, on July 8, 1959, about 11 o'clock a. m., William Branch, a Building Inspector for appellant city was directed by Robert Streator, his supervisor, to make an inspection of the building at 4047 Delmar. He immediately undertook to make said inspection. Branch was accompanied by William Perschbacher, another inspector, and they found "a two and a half story building, fourth class construction, masonry, a porch on the front and an entrance to the side." The front entrance was 10 feet off the sidewalk and the door was open. They entered the hallway and met defendant Evans who identified himself as janitor and caretaker. They identified themselves to him as "City, building inspectors" by exhibiting their badges as such, and they advised him that they were there to inspect the building and he said "all right." They said they would start with the cellar first, and all went to the cellar, where Evans identified the unit there as his quarters. They then went to the first floor, rear unit, which they entered on the invitation of a Mrs. Thomas, who was in the unit. She stated that she occupied the unit as a tenant and they asked "how much rent she paid" and asked for her rent receipts. At that time defendant Evans said he could not permit them to ask such questions, as it was none of their business, and that he would not permit any further inspection of the building without permission of the owner.

Inspector Branch testified that they were not then looking "for any building code requirements in the premises," but "were just going through the building * * * just for the use of the building, occupancy of the building." Mr. Branch testified: "My job in going out there was to inspect the occupancy of the building, see about the occupancy, see what the building was used for." They were inspecting with reference to the occupancy permit. They were surveying the occupancy "to determine how the building was used, to see how many families lived in the building, to see the use and the manner they are used."

When the inspectors left Mrs. Thomas' apartment they waited in the hall while defendant Evans telephoned the owner of the building, defendant Hourigan. One of the inspectors also talked to defendant Hourigan on the telephone. While the inspectors were waiting final word from defendant Hourigan, "the persons living upstairs in the premises were on the hall stairs" and the inspectors asked and obtained their names, to wit: a Mr. & Mrs. Thompson, a Mrs. Kessinger, Tom Cusil, Morris Smith, a Mrs. Learman and a Miss Black and a Mr. and Mrs. Horn, the last two being "tenants" on the first floor. All identified themselves as "tenants" of the building. Further inspection was, thereupon, finally refused by both defendants. The inspectors then went to the Tenth District Police Station and asked the police to assist them in making the inspection and returned to the premises, 4047 Delmar, accompanied by a police officer who went in the building and told defendant Evans that the men were Assistant City Building Inspectors; and that it was their job to make an inspection of the building. Evans, however, refused to let them finish the inspection of the building and the police arrested him and took him to the police station. Defendant Hourigan arrived at the police station shortly thereafter and, after he identified himself as the owner of the building and again refused permission to inspect the building, he was also arrested. Both arrests were on charges of denying the right of entry and interfering with a City Building Inspector in the discharge of his duties.

Inspector Branch further testified that they were not denied entry into the building, since Mr. Evans let them in and admitted them to the front hall, the basement and to a part of the first floor, but that they were denied the right to continue the inspection of the building, an inspection "for the use and service, the occupancy of the building"; for "any conflict with the zoning laws" and to see whether the place was being operated as a rooming house and for any violation of the building code.

It was admitted that no physical force was applied by either defendant, nothing but words, the denial of permission; that no force was used by the inspectors or the police to make the inspection; that on both trips to the building the inspectors were invited into the hall by defendant Evans. Defendant Hourigan was never present at the premises with either the inspectors or the police, but that "Mr. Evans refused to let us continue the inspection to each room of the building, what is required to determine occupancy of the building, how many units in it, how many kitchens in the building, and so forth." Witness Branch admitted that he had previously testified concerning his statements to defendant Evans, as follows: "We told him we were there to make an inspection of the building and to determine whether or not it was still being operated as a rooming house." One of the police officers called in by the inspectors testified that he explained the matter of the requested inspection to both defendants and both refused to consent to the inspection. There was no physical obstruction of any kind, but permission for inspection was refused.

The supervisor of the rooming-house section of the Building Commissioner's office in St. Louis identified a copy of the receipt issued to defendant Hourigan on October 11, 1957, for $9, an application fee in connection with his application *to operate a rooming house* at 4047 Delmar. He said these fees were charged for "a certificate of occupancy, occupancy permit," and that the receipt was dated the day after the money was paid. A Certificate of Occupancy had been issued to defendant Hourigan at the time he made his application for a rooming-house permit, and it indicated the premises were within the zoning law of the city. The place had therefore been cleared as to zoning and the use applied for was legal at the time. Defendants offered no evidence.

Appellant contends that the trial court erred in holding that the mentioned ordinances of the City of St. Louis "are null and void and violative of right guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Sections 15 and 19 of the Missouri Constitution." Appellant insists "that said constitutional provisions do not prohibit reasonable entry and inspection for the purpose of administering ordinances relating to public health, safety and welfare."

As indicated, the first charge against each defendant purports to be based upon an alleged violation of Ordinance 44886, Vol. 2, Part 1, Ch. 1, Sec. 14. This section is as follows:

"Sec. 14, Right of entry.—When necessary in the performance of duty, the building commissioner or subordinate or authorized agents, or any designated official or subordinates or authorized agents, are hereby empowered at any time between nine o'clock A.M. and six o'clock P.M., or at any time it is necessary in his opinion, to enter any structure or portion thereof, or to enter upon any lot. Should such right of entry be denied in any instance such official may invoke the aid of the police department to enforce such right."

Section 56, referred to in the information, provides a penalty for "any violation of the provisions of this code for which no penalty is elsewhere fixed * * *."

Respondents insist that the provisions of Section 14 are vague, indefinite and not susceptible of understanding; that the section "does not provide for the arrest or prosecution of the owner, or person in charge of the property, for denying entry nor does it even designate who shall be subject to penalty for denying it"; that Section 14 does "not designate a misdemeanor or offense which can result in arrest, prosecution or conviction"; and that, no offense being stated or provided for, the punishment section, Section 56, has no application.

■ We think it is clear that Section 14 imposes no duty to admit such officials as are referred to therein and that it does not purport to prohibit a denial of such right of entry. The section purports to be a mere grant of the right of entry to the officials mentioned, when necessary in the performance of duty and it purports to tell the official what to do if such right of entry be denied. It does not make the act of denial an offense, nor impose such a duty upon anyone to grant permission so as to make such a denial a violation of this particular section. While the section provides that in the event that "such right of entry be denied * * * such official may invoke the aid of the police department to enforce such right," the method of enforcement is not specified, whether by force to open the premises, break down the doors, obtain a warrant or other legal authority to enter, or to arrest some one for obstructing an officer in the discharge of his duty.

Appellant at no place in its brief attempts to point out in what manner any act of either defendant, as charged in the first case against each defendant, could constitute a violation of Section 14. Appellant merely states that: "Said Section 14 of the Building Code empowers the Building Commissioner of the City of St. Louis, or other authorized subordinates to enter upon private premises when necessary in the performance of duty in connection with the enforcement of Building Code provisions." Appellant then points to sections providing penalties for violation of provisions of the code where no specific penalties are provided, but appellant does not indicate how defendants could or did violate any of the provisions of Section 14, since it makes no requirements, imposes no duties and contains no prohibitions applicable to either defendant.

Appellant in the trial of the cause offered a number of other ordinances in evidence, but there is no contention that the first charge against each defendant is based on any of these ordinances and they are not

relied on in the brief as supporting these charges.

◼ The acts charged in the first information filed against each of the defendants do not constitute a *violation* of Section 14. *A denial* of the right of entry referred to in Section 14 does not *constitute a violation* of that particular section. On the record presented, the first charge against each defendant is insufficient to require a ruling on the mentioned constitutional questions. The court did not err in discharging each defendant on the first charge, regardless of the reasons assigned. Where the trial court reaches a correct decision, it is immaterial that the court may have assigned an erroneous or insufficient reason therefor. Spiking School Dist. No. 71, DeKalb Co. v. Purported "Enlarged School Dist. R–11, DeKalb Co.", 362 Mo. 848, 245 S.W.2d 13, 17(2); Producers Produce Co. v. Industrial Commission, 365 Mo. 996, 291 S.W.2d 166, 170(1); Brown v. Montgomery, 354 Mo. 1041, 193 S.W.2d 23, 27(3).

As to the second charge against each defendant, respondents insist that they were properly "discharged on the merits for the reason that the record is totally lacking in any evidence of obstruction, resistance or hindrance." In effect, respondents contend that the *denial of permission* to complete the inspection of the building by defendant Evans at the property and the refusal of defendant Hourigan to grant permission on the telephone (when the officers talked to him) and again at the police station, on his arrival there, could not (and that mere words could not) constitute an offense under Section 36, Ch. 46, Vol. 1 of the Revised Code, City of St. Louis, which provides as follows: "Whoever shall, in this city, * * * hinder, obstruct, resist or otherwise interfere with any city officer in the discharge of his official duties * * * shall be deemed guilty of a misdemeanor." See City of St. Louis v. Langeneckert, Mo.App., 210 S.W.2d 736, 737.

Respondents also argue that they were properly discharged "for the reason that entry was never denied to the premises", but that they only denied "an extended search of specific rooms and to talk with defendants' tenants." Respondents rely on the fact that the City Building Inspectors were invited into the hall of the building, inside the building, on two occasions and, also, the inspectors made an inspection of the basement unit and of one first floor apartment before further inspection was denied.

◼ Although in the Langeneckert case the force used was "holding, blocking, pushing and pulling" an officer, it does not follow that such force so applied was necessary in order to constitute an offense under said Section 36. It has been held in many cases that to obstruct or hinder does not require a resort to violence. Driskell v. Parish, 7 Fed.Cas. pages 1095, 1098; State v. Merrifield, 180 Kan. 267, 270, 303 P.2d 155, 158; United States v. Williams, 28 Fed.Cas. pages 631, 633. And see Perkins v. Wilcox, 294 Mo. 700, 242 S.W. 974. It was unnecessary for the authorized agents of the Building Commissioner to attempt to inspect by force and to be resisted by force and violence in order to make out a case under said Section 36. The evidence as to each defendant's refusal to allow the mentioned officials to proceed with the inspection of the described premises was entirely sufficient on the fact issue to show hindrance, obstruction, resistance and interference. We also find no merit in respondents' contention that there was no denial of entry to the premises because on two occasions the officers were admitted to the first-floor hall and on one occasion were permitted to inspect two units before they were denied permission to proceed further.

We come now to the question of whether defendants' conduct in hindering, obstructing, resisting or otherwise interfering with the City Building Commissioner's representatives constituted an offense under Section 36, supra, in view of respondents'

contention that Section 14, supra, under which the inspectors and agents of the Building Commissioner may have acted was null, void and of no effect because it violated defendants' constitutional rights under Article I, Sections 15 and 19 of the Constitution of Missouri 1945 and under the 4th and 14th Amendments to the Constitution of the United States.

The second charge against each defendant, as stated, purports to be based on "Ordinance No. 44886, Vol. 1, Ch. 46, Sections 36 and 45; Ch. 1, Sec. 16, approved 2/28/49." Sections 45 and 16 are penalty sections and we have set out above the applicable portions of Section 36, supra. Chapter 46 deals with miscellaneous offenses.

The informations in the second case against each defendant, as stated, charges that each defendant on the 8th day of July, 1959, did wilfully and unlawfully hinder and obstruct an authorized city officer, a Building Inspector, in the discharge of his official duties; and did prevent him from inspecting the premises known and numbered as 4047 Delmar Blvd., St. Louis, Missouri.

It will be noted that no facts are stated as to the manner or method of hindrance, obstruction, resistance or prevention (compare with the information filed in City of St. Louis v. Langeneckert, supra), but no objections are raised on that ground.

On the issue presented as to the second charge, respondents contend that Section 14, supra, under which it is assumed the officers were acting and upon which the first charges were based, "constituted an unreasonable grant of arbitrary power to city officials leaving the enforcement of the same to the caprice of said officials"; that the section purports "to grant unlimited power to a petty officer of the City * * * by the mere exhibition of a badge"; that the necessity to obtain evidence of "zoning, rooming house or building code violations is of no more importance than that" for the apprehension of crim-

inals; and that the arrest and prosecution of such violators of the criminal laws must be subject to constitutional guarantees, which guarantees also protects citizens from illegal enforcement of ordinances.

It is respondents' theory that Section 14, supra, was unconstitutional, null, void and of no effect and that the inspectors, as representatives of the City Building Commissioner, had no authority to demand admission to the premises for inspection purposes and hence defendants could not be guilty of hindering, obstructing, resisting or interfering with a city officer in the discharge of his official duties and, therefore, their discharge by the trial court should be affirmed. Compare City of St. Louis v. Penrod, Mo.App., 332 S.W.2d 34, 38.

In determining the issues presented, we must state other facts shown by this record and review certain facts already stated. All of the applications filed with the appellant city with reference to the premises located at 4047 Delmar show that defendant Hourigan resided at 6900 Melrose Avenue, University City, Missouri. On October 10, 1957, he filed the application for a "Certificate of Occupancy" with the Department of Public Safety, Division of Building and Inspection, City of St. Louis, Missouri. The application described the property as a three-story brick building and stated the occupancy of the structure as "Rooming House." On the same date, but dated October 11, 1957, a fee was paid, a receipt given and a "certificate of Occupancy" was issued to said defendant Hourigan stating that the "property at 4047 Delmar * * * is to be used for Rooming House." On the same date, said defendant Hourigan filed his application with the Board of Public Service, Department of Public Safety of said city for a "Permit to Operate" a rooming house at 4047 Delmar in said city. The application on its face shows 8 light-housekeeping units, 8 bedrooms and 8 beds and gives the name of *the operator* as Wm. Hourigan and recites: "He further states that said oper-

ator has and accepts full responsibility for the lawful operation of said establishment." Under the facts here, no personal privacy or private residence of defendant Hourigan is involved. Nor is such an issue presented as to defendant Evans, who admitted the inspectors to his personal quarters in the basement without objection.

As stated, the evidence shows that, subsequent to the filing of the mentioned applications, the described property was inspected on May 12, 1958, October 1, 1958, November 7, 1958 and November 28, 1958. The notice of denial of the application to operate as sent to defendant Hourigan, on January 23, 1959, states: "In regard to your application of October 10, 1957 to operate a Class 3 Rooming House at 4047 Delmar, this application to operate a rooming house under the provisions of Ordinance 48338, approved April 4, 1957, is denied this 20th day of January, 1959, by the Board of Public Service. The denial of such application for permit to operate a Class 3 Rooming House under Ordinance 48338 is made because subject premises fails to meet and are in violation of the following requirements of said Ordinance." The letter then listed the requirements and the violations, the latter were listed as follows: *Subject Premises has:* No exit signs provided. Three fire extinguishers. (Lacks 1.) No bulletin board provided. Units are not numbered. No guest register provided. Two water closets; 1 bath and 1 lavatory. (Lacks 4 water closets, 3 baths and 3 lavatories.) No approved fire-resistive covering on basement ceiling. No proper fire separations or approved solid slab self-closing doors at each floor level. Wall openings within prescribed area are not fire stopped.

Thereafter, on July 8, 1959, a further inspection was attempted by the city and denied by both defendants, except as stated, and the charges in question were filed.

The evidence indicates that the alleged purpose of the proposed inspection was to determine the occupancy of the building, how it was occupied and used, to see whether the place was being operated as a rooming house and for any violations of the building code. Appellant now admits that the premises had been thoroughly inspected for structural matters several times prior to the date of the offense charged against defendants; and that the only "remaining fact to be discovered was whether the prior rooming house occupancy had been terminated or still existed." Such, therefore, was the admitted purpose of the proposed inspection on July 8, 1959, when the two Assistant City Building Inspectors, acting under orders of their supervisor, visited the described property and sought to make the further inspection. It further appears that the portions of the building of which inspection was refused and denied were the portions of the building occupied by persons who identified themselves as "tenants." The question of tenancy is conceded, since respondents argue that inspection was only denied after an attempt was made "to talk with defendants' tenants."

In addition to the ordinance upon which this prosecution is directly based, to wit, Section 36, Chapter 46, of the Revised Code of the City of St. Louis, plaintiff offered in evidence Ordinances No. 48915, 45309, 44101, 44756 and 48338. The latter Ordinance 48338, approved April 4, 1957, was enacted under the police power of the city "to protect the public health and safety by establishing minimum standards for rooming houses, boarding houses, lodging houses and hotels; regulating the issuance and revocation of licenses and permits therefor; providing for safety appliances therefor; providing for inspections, frequency of same, and fixing of fees therefor, providing for condemnation for human occupancy, setting up regulations governing such condemnation, and creating and defining the duties of the Housing Section of the Division of Building and Inspection."

Division 1, Section 2 defines a rooming house as: "Rooming House—A rooming house is a dwelling, other than a hotel, containing one or more rooming units or

three or more light housekeeping units * * *."

Division 2, Section 1 and 2 provides: "It shall be unlawful to operate a Hotel, Lodging House, Rooming House or Boarding House without first obtaining a permit and license as hereinafter set forth. * * * Every operator, before engaging in the business of conducting a hotel, lodging house, rooming house or boarding house shall file an application with the Building Commissioner and where required, with the secretary of the Board of Public Service as hereinafter set forth."

Division 2, Section 3 defines Class "3" as: "A rooming house or boarding house containing five to nine rooming units and/or light housekeeping units."

Division 2, Section 6 provides: "Upon filing of the application for a permit to operate a Class 1, Class 2, Class 3, Class 4 rooming house, boarding house or hotel, *the Building Commissioner shall make or cause to be made an inspection of such proposed building* to ascertain whether the proposed building to be used conforms to the requirements of this ordinance, of the fire, health, sanitary and safety ordinances and to the rules and regulations of the Division of Building and Inspection, Health Division and Fire Department." (Italics ours.)

Division 3 sets out "Building Requirements"; Division 4 sets up "Safety Requirements"; Division 5, "Sanitation and Health" requirements; and Division 6, Section 1, makes it *the duty of the Building Commissioner to make or cause to be made a semi-annual inspection of all Class 3 Rooming Houses* and provides: "The first inspection shall be made between the first day of January and the thirtieth day of June and the second inspection shall be made between the first day of July and the thirty-first day of December of each year."

Section 7 of Division 6 provides: "It shall be the duty of the operator to keep available on the premises at all times, proper keys to all rooms, so that proper inspec-

tion can be made by the Rooming House Inspector."

As stated, the contention of respondents is that the city had no lawful authority to enact either Section 36 of Chapter 46, or Section 14, Part 1, Vol. 2, supra, because said ordinances violated the constitutional rights and privileges of the defendants under the mentioned sections of the State and Federal Constitutions.

Section 15 of Article I of the Missouri Constitution 1945 prohibits unreasonable searches and seizures. Section 19, Article I, deals with self-incrimination and double jeopardy and provides: "That no person shall be compelled to testify against himself in a criminal cause * * *."

■ The 14th Amendment to the Constitution of the United States protects the privileges or immunities of citizens of the United States and prohibits a state from depriving any person of life, liberty, or property, without due process of law or denying equal protection of the laws. The 4th Amendment to the Constitution of the United States prohibiting unreasonable searches and seizures applies only to the Federal government. Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782.

■■ The constitutional provisions relied upon by respondents do not prohibit reasonable entry and inspection of premises used for the purposes for which the respondents' premises were used for when entry of such premises is sought for the purpose of administering ordinances relating to public health, safety and welfare, nor do they prohibit an inspection, such as was sought under the facts attendant to the second charge against each defendant. Nor is there any merit in respondents' contention that the city had no authority to enact Section 36 upon which the second charges are based.

In the case of State ex rel. Chicago, R. I. & P. Ry. Co. v. Woods, 316 Mo. 1032, 292

S.W. 1033, 1035, decided April 8, 1927, this Court said: "In its contention 7 relator invokes state and federal constitutional provisions against unreasonable searches and seizures and guaranteeing the equal protection of the law and due process of law, and also invokes the Missouri constitutional provision for the administration of right and justice without denial. U. S. Constitution, section 1 of amendment 14, and amendment 4. Missouri Constitution, § 11, art. 2, section 30, art. 2, and section 10, art. 2. Only unreasonable searches are prohibited." And see State v. Turner, 302 Mo. 660, 259 S.W. 427, 428(3); City of St. Louis v. Baskowitz, 273 Mo. 543, 201 S.W. 870, 879(7, 8); State ex rel. American Mfg. Co. v. Anderson, 270 Mo. 533, 194 S.W. 268, 271, L.R.A. 1917E, 833; United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653.

At the time further inspection of the premises was denied, the evidence shows that defendant Hourigan was operating a rooming house without a city license to so operate, as his application had been denied, but he held a "Certificate of Occupancy" issued by the city. The facts so appeared to the officers when they interviewed the "tenants" before further inspection was finally refused. Respondents now concede without question the facts which clearly appeared to the officials when final denial of further inspection was made. Further, the purpose stated by the inspectors did not involve a criminal charge, but only the question of use of the premises which might disclose a violation of a city ordinance for which a penalty was provided.

Respondents in support of their contention that the court did not err in discharging defendants cite "Wilke's Case, 2 Wils. 151, 19 State Trials 1405; Entinck v. Carrington, 2 Wils. 275, 19 State Trials 1029; Opinions of Lord Mansfield of the King's Bench; Lord Camden for the Court of Common Pleas; Works of John Adams, p. 534 (James Otis on Searches and Seizures); State ex rel. Schlueter Mfg. Co. v. Beck, 337 Mo. 839, 85 S.W.2d 1026; Kansas City v. Markham, 339 Mo. 753, 99 S.W.2d 28;

State ex rel. St. Louis Union Trust Co. v. Sartorius, 351 Mo. 111, 171 S.W.2d 569."

No attempt has been made to apply any authority cited to the specific facts of this case. Respondents' brief only superficially reviews the authorities as follows: "It is not really necessary to cite to this learned Court the vast authority upon Searches and Seizures as given to us by the judicial minds of England and the early Americans. These precepts are basic to every lawyer."

▮ These authorities do not support respondents' contentions under the facts of this case. "It is well settled that laws and ordinances prescribing regulations for the promotion of the health and welfare of the people are referable to the police power, and, if reasonable, are not obnoxious to the due process clause of either the state or Federal Constitution. * * * 'The constitutional guaranties that no person shall be deprived of life, liberty, or property without due process of law, and that no state shall deny to any person within its jurisdiction the equal protection of the laws, were not intended to limit the subjects upon which the police power of a state may lawfully be exerted.'" Ex Parte Lewis, 328 Mo. 843, 42 S.W.2d 21. And see Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 13 S.W.2d 628, 634.

Respondent Hourigan having filed the mentioned applications and it appearing that he was holding a "Certificate of Occupancy" issued by the Department of Public Safety, Division of Building and Inspection of the City of St. Louis for Rooming House purposes; that he had applied for a permit to operate a rooming house and been denied; and that he was then, in fact, operating a rooming house in said city without an operating permit, we must and do hold that under the facts shown by this record, the inspection sought under the police power granted to the city for the purposes shown was not unreasonable and respondents were not entitled to invoke the protection of the constitutional provisions relied upon. Givner v. State of Maryland, 210 Md. 484, 124

A.2d 764; Hubbell v. Higgins, 148 Iowa 36, 126 N.W. 914; Dederick v. Smith, 88 N.H. 63, 184 A. 595, 599 (appeal dismissed 299 U.S. 506, 57 S.Ct. 38, 81 L.Ed. 375); Frank v. State of Maryland, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877. Also see State ex rel. Eaton v. Price, 168 Ohio St. 123, 151 N.E.2d 523; State ex rel. Eaton v. Price, 105 Ohio App. 376, 152 N.E.2d 776. And see Ohio ex rel. Eaton v. Price, 360 U.S. 246, 79 S.Ct. 978, 3 L.Ed.2d 1200 affirmed by an equally divided court on the authority of Frank v. State of Maryland, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877, on June 27, 1960, when four of the Justices expressed their views contrary to the Frank opinion, 364 U.S. 263, 80 S.Ct. 1463, 4 L.Ed.2d 1708.

In the Givner case, supra, 124 A.2d 764, 769, the court said: "It is clear that prohibitions against unreasonable searches and seizures do not prohibit reasonable searches and seizures. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. As Cornelius on Searches and Seizures, 2nd Ed., Section 35, states, 'The constitutional provision in question, while primarily designed to protect the individual in the sanctity of his home and in the privacy of his books, papers and property, does not apply to reasonable rules and regulations adopted in the exercise of the police power for the protection of the public health, morals and welfare.' * * *."

■ The rights of defendant Evans under the facts of this case rest upon and are not superior to the rights of his employer defendant Hourigan under whose direction he acted. It follows that both defendants-respondents were in no position to claim the protection of the constitutional provisions relied upon as against the proposed reasonable inspections and that in denying entry and refusing further inspection of the mentioned premises the defendants brought themselves within the prohibitions of Section 36 of Chapter 46 of the Revised Code under which they were charged.

The judgments discharging the defendants-respondents on the charges of denying entry on the basis of Section 14 of the Building Code is affirmed. The judgments discharging defendants-respondents on the charges of resisting an officer of the city in the discharge of his duties are reversed and the causes remanded.

All concur.