[Civ. No. 22128. First Dist., Div. Two. Sept. 22, 1965.]

ROLAND CAMARA, Plaintiff and Appellant, v. THE MUNICIPAL COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

---

*Assigned by the Chairman of the Judicial Council.

Marshall W. Krause and Roger H. Bernhardt for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and Charles W. Rumph, Deputy Attorneys General, for Defendant and Respondent.

SHOEMAKER, P. J.—This is an appeal from an order denying a writ of prohibition.

The Division of Housing Inspection of the Department of Public Health is required, under part III, section 86, of the San Francisco Municipal Code, to make an annual inspection of all San Francisco apartment houses for the purpose of licensing such apartment houses and issuing permits of occupancy.

On November 6, 1963, Inspector Nall visited the premises at 225 Jones Street for the purpose of making such an inspection, and was informed by the manager of said apartment building that the lessee of a ground floor rental unit (223 Jones), which was restricted to commercial use under an existing permit of occupancy, was using the leased premises as a residence and was living in the rear of his store. Nall then called on plaintiff, who admitted that he was living in the rear of his store, but refused to allow Nall to enter and inspect the premises. Two days later Nall returned and was again refused permission to inspect the premises. Plaintiff failed to appear on a citation issued by the district attorney, after which an inspector again went to plaintiff, informed him of the health department's duty to make an annual inspection of all San Francisco apartment houses, and further informed him that the existing permit of occupancy authorized commercial and not residential use of the ground floor unit leased by plaintiff. Plaintiff again refused to allow said premises to be inspected.

Plaintiff was subsequently arrested and charged with violating section 507 of the Housing Code of the City and

County of San Francisco (hereinafter referred to as "Housing Code").

Plaintiff expressly concedes that he committed the offense proscribed by section 507 of the Housing Code and that his defense to prosecution for said charge is predicated solely upon the alleged unconstitutionality of section 503 of said code. Plaintiff asserts that section 503 authorizes an unreasonable search and seizure, in violation of article I, section 19, of the California Constitution and the Fourth Amendment to the federal Constitution, as applied to the states through the Fourteenth Amendment.[1] Plaintiff also relies upon the privileges and immunities clauses of the Fourteenth Amendment.

Section 503 of the Housing Code provides as follows: "Authorized employees of the City departments or City agencies, so far as may be necessary for the performance of their duties, shall, upon presentation of proper credentials, have the right to enter, at reasonable times, any building, structure or premises in the City to perform any duty imposed upon them by the Municipal Code."

Section 507 of the Housing Code provides in pertinent part that "Any person, the owner or his authorized agent who violates, disobeys, omits, neglects, or refuses to comply with, or who resists or opposes the execution of any of the provisions of this Code . . . shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding five hundred dollars ($500.00), or by imprisonment, not exceeding six (6) months or by both such fine and imprisonment, unless otherwise provided in this Code. . . ."

The question whether an ordinance such as section 503 of the Housing Code is vulnerable to attack upon the constitutional grounds raised by plaintiff is one of first impression in this state. However, the constitutionality of similar regulations enacted in other jurisdictions has been challenged on several occasions and, in all but one instance, has been upheld.

We discuss first the only case which resulted in a finding of unconstitutionality, to wit: *District of Columbia* v. *Little* (D. C. Cir. 1949) 178 F.2d 13. This case was later affirmed on other than constitutional grounds *(District of Columbia* v. *Little* (1950) 339 U.S. 1 [70 S.Ct. 468, 94 L.Ed. 599]). We do so because the remaining cases to which we shall refer,

---

[1]Although the petition also alleged, as above noted, that section 503 violated article I, section 1, of the California Constitution, plaintiff has apparently abandoned this point on appeal.

consider and then decide adversely to the arguments of unconstitutionality supported by the *Little* decision. In *Little,* the court undertook to determine the validity of certain regulations of the District of Columbia which required owners and occupiers of premises to maintain them in a clean and wholesome condition, authorized health officials to examine any building supposed or reported to be in an unsanitary condition and denominated as a misdemeanor interference with an inspection. Defendant *Little* was convicted of hindering, obstructing and interfering with a health inspector in the performance of his duties upon a showing that she had refused to unlock the door of her private residence to a health inspector who was investigating a complaint that there was an accumulation of loose and uncovered garbage and trash in the halls and that certain persons residing in the house had failed to avail themselves of the toilet facilities. The conviction was subsequently reversed, the federal circuit court of appeals holding that the Fourth Amendment prohibited health officials without a warrant from invading a private home to inspect it, even though there was probable cause to believe that there existed within the dwelling a violation of a law designed to protect the health, safety or welfare of the public. The court expressly rejected the contention that the Fourth Amendment was premised upon and limited by the Fifth Amendment and was therefore inapplicable to regulations which only incidentally involved criminal charges and which were primarily designed to protect the public health.

A dissenting opinion by Judge Holtzoff took the position that the Fourth Amendment was applicable only to proceedings of a criminal character and that the right of inspection in the interest of public safety and health was essentially a civil matter to which any criminal prosecution was only incidental.

Upon appeal to the Supreme Court of the United States, Mr. Justice Black rendered the opinion of the court that respondent Little had not been guilty of "interference" under the controlling District regulation (*District of Columbia* v. *Little* (1950) 339 U.S. 1 [70 S.Ct. 468, 94 L.Ed. 599]). Accordingly, it was unnecessary to determine the validity of the ordinance involved.

We now discuss in order the four cases involving the constitutionality of ordinances similar to that involved herein, and in each of which, as we have noted, the *Little* case was

considered at length. However, the reasoning of the *Little* case did not persuade any of the appellate courts concerned and in each case the ordinance was held a valid exercise of the police power.

The first case is *Givner* v. *State* (1956) 210 Md. 484 [124 A.2d 764], wherein the Maryland Court of Appeals upheld three Baltimore ordinances which authorized health, fire and building inspectors to enter upon premises during daylight hours for the purpose of conducting inspections to determine whether such premises complied with the applicable regulations and which imposed a fine upon an owner or occupier who refused to allow such inspection. Two of the ordinances, which were substantially identical with section 503 of the Housing Code, contained no requirement of probable cause to suspect the existence of a nuisance and authorized representatives of the building inspection engineer and the chief engineer of the fire department to enter "any building, structure or premises" during daylight hours "for the purpose of performing his duties" under the code.

Defendant Givner, who was convicted of violating these ordinances, contended on appeal that they were prohibited by the due process clause of the federal Constitution and by an article of the state Constitution which the court characterized as being *in pari materia* with the Fourth Amendment of the federal Constitution. After discussing the *Little* case at length, the court chose not to follow its reasoning and overruled the constitutional objections to the ordinances on the ground that the inspections or searches authorized by said ordinances were not "unreasonable." Although the court expressed doubt that either the federal or state prohibitions against unreasonable searches and seizures could be deemed inapplicable in civil matters, the court nevertheless concluded that different standards of reasonableness applied to a search for evidence to prove guilt of a crime than to an inspection for the purpose of protecting the public health or safety. Since the inspections authorized by the ordinances under attack were of a routine nature, which were to be made at reasonable hours and were primarily for protective and not punitive purposes, they could not be deemed unreasonable and could lawfully be made without search warrant.

In *Frank* v. *Maryland* (1959) 359 U.S. 360 [79 S.Ct. 804, 3 L.Ed. 2d 877], the United States Supreme Court, in a five-to-four decision, upheld the validity of one of the three Baltimore inspection ordinances involved in the *Givner* case. However, the ordinance in question was the most narrowly

drawn of the three and authorized the commissioner of health to demand entry to any house, cellar or enclosure, during daylight hours, only if he "shall have cause to suspect that a nuisance exists" therein. The ordinance imposed a $20 fine upon any owner or occupier who refused or delayed to allow such entry and submit to the inspection.

Defendant Frank was convicted of violating said ordinance after he refused to allow an inspection by a health official who was acting upon a neighbor's complaint of rats and who had observed that the defendant's house was in an extreme state of decay and that a large quantity of straw and debris containing rat feces was located at the rear of the house.

Frank's conviction was affirmed by the United States Supreme Court in a majority opinion delivered by Mr. Justice Frankfurter, with whom Mr. Justice Clark, Mr. Justice Harlan and Mr. Justice Stewart concurred (Mr. Justice Whittaker specially concurring by way of clarification of the rule adopted by the majority). The court concluded that although the right to be secure from an invasion of personal privacy was protected by the Fourth Amendment, as applied to the states through the Fourteenth Amendment, the primary purpose of the Fourth Amendment was to safeguard the right to be secure from searches for evidence to be used in criminal prosecutions or for forfeitures. The court noted that under the Baltimore city code, an occupant who had failed to maintain a building in hygienic condition was notified to abate the substandard conditions and was subjected to criminal prosecution only in default of such correction. The attempted inspection of Frank's house was accordingly for the purpose of ascertaining evils to be corrected and not for the purpose of securing evidence upon which a criminal prosecution could be based. Since the Baltimore ordinance authorized such an inspection only during reasonable hours and upon valid grounds for suspicion of the existence of a nuisance, the court concluded that Frank's resistance could only have been based upon a denial of any official justification for entry to his home. Such right was upon the periphery of the important interests safeguarded by the Fourth and Fourteenth Amendments and was outweighed by the city's vital need to maintain adequate standards of health.

Since the Baltimore ordinance, unlike section 503 of the Housing Code, contained a requirement of probable cause for an inspection, the majority opinion in the *Frank* case clearly does not establish the validity of section 503. However, the majority opinion in *Frank* does contain certain language in-

dicating that an ordinance authorizing routine, periodic inspections, for which probable cause might obviously be lacking, would similarly be immune to constitutional attack. The court stated: ''Time and experience have forcefully taught that the power to inspect dwelling places, either as a matter of systematic area-by-area search or, as here, to treat a specific problem, is of indispensable importance to the maintenance of community health; a power that would be greatly hobbled by the blanket requirement of the safeguards necessary for a search of evidence of criminal acts. The need for preventive action is great, and city after city has seen this need and granted the power of inspection to its health officials; and these inspections are apparently welcomed by all but an insignificant few.'' (*Frank* v. *Maryland, supra,* at p. 372.)

Mr. Justice Douglas, with whom Chief Justice Warren, Mr. Justice Black and Mr. Justice Brennan concurred, wrote a dissenting opinion in which he expressed the view that a health official was not entitled, under the Fourth and Fourteenth Amendments, to enter a private dwelling without first having secured a warrant upon a showing of probable cause to make an inspection.

In *State* ex rel. *Eaton* v. *Price* (1958) 168 Ohio St. 123 [151 N.E.2d 523], a case decided one year prior to *Frank* v. *Maryland, supra,* the Ohio Supreme Court upheld the validity of a Dayton ordinance which was substantially identical with section 503 of the Housing Code in that it contained no requirement of probable cause and authorized the housing inspector to make inspections to determine the condition of dwellings, dwelling units, rooming houses, rooming units and premises within the city ''in order that he may perform his duty of safeguarding the health and safety of the occupants of dwellings and of the general public.'' The ordinance required owners or occupants of such premises to allow entry for such inspection at any reasonable hour. Any person violating the ordinance was subject to fine, imprisonment, or both.

Defendant was convicted of violating said ordinance by refusing to admit a housing inspector to his premises.

The Ohio Supreme Court upheld the ordinance and the conviction was affirmed. The court concluded that the Fourth Amendment of the federal Constitution was inapplicable to the states and that the applicable provision of the state Constitution did not prohibit a reasonable search such as that authorized by the Dayton ordinance. The court, in so holding, commented at length upon the decision of the federal circuit

court of appeals in *District of Columbia* v. *Little, supra,* but chose to follow *Givner* v. *State, supra,* and the views expressed by the Holtzoff dissent in the *Little* case.

The decision in *State* ex rel. *Eaton* v. *Price, supra,* was appealed to the United States Supreme Court, which noted probable jurisdiction of the appeal, by a vote of four to four, less than one month after it had decided *Frank* v. *Maryland, supra.* (*Ohio* ex rel. *Eaton* v. *Price* (1959) 360 U.S. 246 [79 S.Ct. 978, 3 L.Ed.2d 1200].)[2] Since the United States Supreme Court was equally divided, the case was not taken over by that court and the judgment of the Ohio Supreme Court was not affected.

The most recent decision dealing with the validity of an inspection ordinance is *City of St. Louis* v. *Evans* (Mo. 1960) 337 S.W.2d 948. The ordinance in that case authorized the building commissioner or his authorized agent to enter any structure or portion thereof when necessary in the performance of duty at any time between 9 a.m. and 6 p.m. or at any time it was necessary in his opinion. The ordinance further provided that if the right of entry were denied, the official might invoke the aid of the police department in order to gain such entry. Another ordinance designated as a misdemeanor offense hindering, obstructing, resisting or otherwise interfering with a city officer in the discharge of his official duties. Defendants Evans and Hourigan, the caretaker and the owner of a rooming house, refused to allow a city building inspector to enter certain portions of the building to ascertain whether they were being used in accordance with an existing occupancy permit and persisted in such refusal even after the inspector had enlisted the aid of a police officer. The two defendants were subsequently charged with a violation of the ordinance. Although the trial court entered judgment dismissing the prosecution and discharging the defendants, said judgment was reversed by the Missouri Supreme Court, which held that neither of the above-mentioned ordinances violated the privileges and immunities, equal protection or due process clauses of the Fourteenth Amendment to the federal Constitution or certain provisions of the state Constitution which prohibited

---

[2]Since Mr. Justice Stewart's father was a member of the Ohio Supreme Court and had participated in the decision in *State* ex rel. *Eaton* v. *Price, supra,* he disqualified himself from sitting on the case. (*Ohio* ex rel. *Eaton* v. *Price, supra,* at p. 249.) The four Justices who had dissented in *Frank* v. *Maryland, supra,* voted to note probable jurisdiction of the *Price* appeal, and the four who comprised the majority in *Frank* expressed the view that that case was completely controlling of the *Price* case. (*Ohio* ex rel. *Eaton* v. *Price, supra.*)

unreasonable searches, self-incrimination and double jeopardy. The court pointed out, however, that since neither Evans nor Hourigan resided in the portion of the premises which the inspector sought to enter, the facts presented no issue as to their right of personal privacy or private residence.

We are persuaded that the reasoning of the authorities upholding the constitutionality of this type of inspection statute should be followed by this court. As we have noted, with the sole exception of the federal circuit court of appeals which decided *District of Columbia* v. *Little, supra,* the constitutionality of ordinances similar to section 503 of the Housing Code have been upheld. We believe that such a result is an eminently reasonable one and that it is urgent in this day of the megalopolis that citizens be protected from conditions deleterious to their health and welfare, and that this right to protection should not be deemed subordinate to the individual's right to resist any official infringement, however reasonable, upon the ground of absolute privacy of his dwelling.

The Housing Code, of which section 503 is a part, commences with section 101, wherein "It is found and declared that there exist in the City and County of San Francisco substandard and insanitary residential buildings and dwelling units whose physical conditions and characteristics render them unfit or unsafe for human occupancy and habitation, and which conditions and characteristics are such as to be detrimental to or jeopardize the health, safety, and welfare of their occupants and of the public."

"It is further found and declared that the existence of such substandard, insanitary, obsolete and deficient buildings and dwelling units threatens the physical, social and economic stability of sound residential buildings and areas, and of their supporting neighborhood facilities and institutions; necessitates disproportionate expenditures of public funds for remedial action; impairs the efficient and economical exercise of governmental powers and functions; and destroys the amenity of residential areas and neighborhoods and of the community as a whole.

"For these reasons it is hereby declared to be the policy of the City and County of San Francisco:

"1. That it is in the public interest of the people of San Francisco to protect and promote the existence of sound and wholesome residential buildings, dwelling units and neighborhoods by the adoption and enforcement of such standards, regulations and procedures as will remedy the existence or prevent the development or creation of dangerous, substandard,

insanitary or obsolete and deficient residential buildings and dwelling units. . . ."

The purpose of the Housing Code, as set forth in section 103, "is to provide minimum requirements for the protection of life, limb, health, property, safety, and welfare of the general public and the owners and occupants of residential buildings, erected or to be erected in San Francisco. . . ."

Section 503 of said code, which authorizes certain city officials to enter and inspect buildings and other structures within the city, requires that any such inspection be made in the course of official duty, at reasonable hours and only upon presentation of proper credentials.

If such inspection should result in a finding that any building or portion thereof is substandard, the owner is directed to remedy the defective condition, under section 505, and may appeal such order to the Housing Appeals Board, under section 1706. A penalty is imposed upon the owner, pursuant to section 507, only if he neglects or refuses to comply with the order of correction.

We conclude, from an examination of the above-quoted provisions, that section 503 is part of a regulatory scheme which is essentially civil rather than criminal in nature, inasmuch as that section creates a right of inspection which is limited in scope and may not be exercised under unreasonable conditions.

The ordinance is thus no broader in scope than those upheld in *Givner* v. *State, supra*; *State* ex rel. *Eaton* v. *Price, supra*; and *City of St. Louis* v. *Evans, supra*; and plaintiff's constitutional objections must fail.[3]

The order appealed from is affirmed.

Agee, J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 16, 1965. Peters, J., and Peek, J., were of the opinion that the petition should be granted.

---

[3] It may be noted that plaintiff places considerable emphasis upon the fact that the ordinance authorizes an inspection without any showing of probable cause. However, the facts in the present case fall short of establishing that the attempted inspection of plaintiff's apartment was not based upon such a showing. Although the petition alleged that the inspection was routine in nature and was not occasioned by any complaint concerning the premises, the answer directly controverts this allegation. Plaintiff thereafter elected to stand upon the assertion that the ordinance was unconstitutional on its face. The instant case is therefore factually indistinguishable in this respect from the *Givner, Price* and *Evans* cases.